[No. 15270. Department Two. May 3, 1919.]

THE STATE OF WASHINGTON, *on the Relation of May Raddue, on behalf of Lowell Raddue, a Minor, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent*.[1]

INFANTS (5) — JUVENILE DELINQUENTS — COMPLAINT FOR DEPENDENCY. A complaint charging that a boy seventeen years of age associates with disorderly boys and was disorderly at a public school during school hours, sufficiently states facts constituting dependency as defined by Rem. Code, § 1987-1, especially in view of the liberal construction enjoined by § 1987-14, and the provisions of § 1987-10 for private hearings and the destruction of records in the interests of the child.

SAME (5) — TRIAL — PRESENCE OF REPRESENTATIVE. A judgment finding the dependency of a child cannot be attacked on the mere conclusion that the child was not represented at the hearing, as required by Rem. Code, § 1987-6, where it appears that his mother was given due notice and brought the child to court for the purpose, there being nothing to show she was not competent to represent him or that the probation officer was not present as required by law.

SAME (5) — RIGHT TO JURY TRIAL — WAIVER. Under Rem. Code, § 1987-2, providing for a jury trial of a dependent child if demanded, the jury is waived if no demand is made, where the child is represented at the hearing.

Application filed in the supreme court March 8, 1919, for a writ of certiorari, to review a judgment of the superior court for King county, Dykeman, J., entered February 17, 1919, committing a dependent child to the state training school. Dismissed.

*Peterson & Macbride*, for relator.

MITCHELL, J.—On February 17, 1919, Lowell Raddue, a minor, between sixteen and seventeen years of age, was found to be a dependent child, and on Feb-

[1]Reported in 180 Pac. 875.

ruary 21, 1919, was ordered committed to the state training school, by the juvenile court department of the superior court of King county.

May Raddue, the mother of the child, filed in this court her petition for a writ to review the order and proceedings of the superior court. Upon a show cause order issued and served, the respondent has made and filed a return.

In the final submission of the cause, plaintiff relies on three chief contentions: First, it is claimed the petition filed in the superior court does not allege facts from which it can be determined if the minor was a delinquent. The petition in the trial court alleges that the child associates with a group of disorderly boys and engages in conduct which endangers his moral welfare, and that, on the 31st day of January, 1919, he was disorderly in his conduct in and about the West Woodland School, during school hours. Thus, there is the complaint of a general line of evil conduct by which he associated with disorderly boys, illustrated by a specific instance in and about a school during school hours. It is contended that the petition in the superior court must be taken as it appears upon its face, and that it is insufficient under § 5 of the juvenile court law of 1913 (Rem. Code, § 1987-5), to the effect that the petition shall contain a statement of facts constituting such dependency or delinquency, as defined in Rem. Code, § 1987-1.

Section 1 of the law makes the whole act applicable to children under eighteen years of age who are delinquent or dependent. The same section, by eighteen subdivisions, gives meanings and definitions of the words "dependent child." Further on, the section defines the words "delinquent child" as one who violates positive statute law or who habitually uses vile,

obscene, vulgar, profane or indecent language, or is guilty of immoral conduct, etc. By the statute, delinquency is a greater departure from right than is dependency. Subdivision 13 of § 1 of the act (Rem. Code, § 1987-1), in speaking of the care and restraint by the parents of the child, declares that a child "who is in danger of being brought up to lead an idle, dissolute or immoral life" is a dependent child; while subdivision 16 of the same section provides that a child, "who from *any cause* is in danger of growing up to lead an idle, dissolute or immoral life" is a dependent child.

Manifestly, to complain that a boy seventeen years of age associates with disorderly boys, and then specify that he was disorderly at one of the schools during school hours, is a sufficient statement of facts constituting dependency, as defined in § 1 of the law. The words used in the complaint are plain words. The term dissolute used in the statute conveys to the common mind the idea of being unrestrained or disorderly, which is the condition attributed to the child by the language of the complaint, because of his associations already developed into open disorder at one of the public schools. Especially must the language of the complaint be deemed sufficient in view of the rule of liberal construction enjoined by § 14 of the act, together with the policy suggested by § 10 thereof, which provides for private hearings in the discretion of the judge or upon demand of the child. Certain written records made in such cases are required to be kept from the public and to be destroyed before the child reaches the age of twenty-one years. The whole law thus presents the plan by which, in the attempt at promoting the child's moral welfare, as little as possible of minor details shall be given to the public lest

there be discouragement to the child and a disturbance of the process of reformation.

Plaintiff calls attention to several cases from other states which appear to support the contention that the complaint is not sufficiently definite. An examination of them shows they rest upon statutes more or less different from ours in the definitions of delinquency and dependency, and are silent with reference to the rule of construction and the suggestion of private hearings and records declared in our law. It is also argued by plaintiff that the proceedings are fatally irregular because the complaint alleged the child was a *delinquent* and the court found he was a *dependent*. On the contrary, the terminology used in this respect, in the petition or complaint, is unimportant, for the court has jurisdiction in either kind of a case. The important thing is that the petition is intended to put the machinery of the court into motion for the achievement of the contemplated purpose. Section 10 of the act provides:

"After acquiring jurisdiction over any child, the court shall have power to make an order with respect to the custody, care or control of such child, *or any order, which in the judgment of the court, would promote the child's health and welfare.*" Rem. Code, § 1987-10.

Plaintiff's second point is that the minor was tried in the absence of his mother and that there was no person or association appointed on behalf of the minor to represent him, contrary to § 6 of the act, which provides: "In any case the judge shall appoint some suitable person or association to act in behalf of the child." By §§ 6 and 7, the act embraces cases of children without parents or guardians, or having any such, their residences are unknown or outside of the state, in which cases there must be publication of sum-

mons. It is the design of the statute that there shall be no hearing in the absence of some proper person to assist and represent the child. In this case, the notice and summons were addressed to and served upon plaintiff, the mother of the child, at the family home in Seattle on February 14, 1919, three days prior to the date fixed and noticed for the hearing. The summons gave notice of the place, date, and hour of the hearing, and commanded plaintiff to appear and resist the same if she saw fit and to have the child with her at the time and place named. Her petition in this court shows that, pursuant to the notice and summons, she did take the child to the superior court at the time of, and for the purposes of, the hearing on February 17th, and the whole record fails to suggest any incompetency of the boy's mother, his natural custodian, to act in his behalf, after having two days' more notice of the hearing than the minimum time provided by the law. Again, § 3 of the act provides for the appointment by the court of one or more discreet persons of good character to serve as probation officers. As to the duties of the probation officer, this section provides:

"The probation officer or officers shall inquire into the antecedents, character, family history, environments and cause of dependency or delinquency of every alleged dependent or delinquent child brought before the juvenile court and shall make his report in writing to the judge thereof, *shall be present in order to represent the interests of the child when the case is heard,* shall furnish the court such information and assistance as the judge may require, and shall take such charge of the child before and after the trial as may be directed by the court." Rem. Code, § 1987-3.

The petition in this court sets out with particularity certain provisions of the law, and then alleges failure

of compliance therewith; but it is wholly silent with reference to the appointment by the court and the services of a probation officer, required by the law. In such condition of the pleading and the law, the allegation that there was no one to represent the minor must be taken as a mere conclusion expressing, in effect, the opinion of the plaintiff that the mother and probation officer were not sufficient representatives for the child. On the contrary, we are satisfied the child had all the representation required or needed.

Plaintiff's third point is based on a provision in § 2 of the act as follows:

"In all trials under this act, any person interested therein may demand a jury trial, or the judge of his own motion may order a jury to try the case." Rem. Code, § 1987-2.

It is stated the record is silent as to whether a jury was demanded or refused; and plaintiff contends that the minor could not waive this provision; that it could only be waived by some person acting for or in his behalf, without which waiver the trial would be void. The juvenile court law is remedial, rather than punitive. It is for, rather than against, the child. Its scope and purposes to such effect are aptly defined in *In re Lundy,* 82 Wash. 148, 143 Pac. 885, Ann. Cas. 1916E 1007. The prayer in the petition to the juvenile court in the present case is to make such orders in the premises as shall be for the welfare of said child. The provision as to a jury trial is not enforceable as a matter of course, but depends for its application upon the demand of some party interested, or the motion of the judge. If the child has no representative at the hearing, that of itself would avoid any judgment other than a dismissal; but, in this case, having seen the child was represented, the failure to

demand a jury trial must be taken as a waiver of such trial.

Accompanying the return made by respondent to the show cause order issued herein, was an affidavit of respondent which plaintiff moved to strike. Our views, herein expressed, rest upon the petition of plaintiff, the return made by respondent, and the law, and not upon the affidavit or any portion thereof.

Finding no error in the proceedings and judgment of the superior court, the show cause order issued out of this court is set aside, and the cause in this court dismissed.

CHADWICK, C. J., MOUNT, TOLMAN, and HOLCOMB, JJ., concur.