*In re* BABY BETTY.

PETITION OF VAN MARTER.

INFANTS—HABEAS CORPUS—CUSTODY OF CHILD—DEPENDENT AND NEGLECTED CHILD—JURISDICTION OF PROBATE COURT.

On certiorari, the judgment in *habeas corpus* proceedings sustaining the validity of an order of the probate court of Wayne county determining a certain infant to be a dependent and neglected child and returning her to the House of Providence, is affirmed by a divided court.

Error and certiorari to Wayne; Moynihan (Joseph A.), J.    Submitted October 6, 1922.    (Docket No.

32.)    Decided March 23, 1923.    Reargued October 2, 1923; former opinion reversed November 13, 1923.

*Habeas corpus* proceedings by Anna Van Marter against Henry S. Hulbert, probate judge of Wayne county, and others to obtain the custody of Baby Betty. Judgment for defendants.    Plaintiff brings error. Affirmed by an equally divided court.

*James H. Pound,* for appellant.

*Paul W. Voorhies,* Prosecuting Attorney, and *Robert M. Toms,* Assistant Prosecuting Attorney. (*Van Dyke & O'Brien,* of counsel), for appellees.

CLARK, J.    Baby Betty is the child of an unmarried woman and was born in Toledo, October 6, 1917. After the birth the mother released the child for adoption to the House of Providence, Detroit, and disappeared.    The House of Providence is a Michigan corporation licensed by the State board of corrections and charities (now State welfare commission, Act No. 163, Pub. Acts 1921 [Comp. Laws Supp. 1922, § 1989 (3)]) "to engage in the business of receiving, maintaining or placing out minor children in homes in this State by indenture, adoption, on trial, or otherwise," etc.    1 Comp. Laws 1915, § 2001 *et seq.*

Soon thereafter the child was placed by the corporation in the home of Elva Stewart and her husband, on trial for the reason it seemed probable that the husband would be called for military service.    Later the Stewarts were divorced.    The child for most, if not all, of the time in question has been cared for by Mrs. Stewart's mother, Anna Van Marter, in her home, where Mrs. Stewart also lived.    Mrs. Stewart failed in an attempt to adopt the child.

In March, 1921, upon the order of the probate court the county agent made investigation and report re-

specting the child and her home with Mrs. Stewart. He disapproved of the home and reported adversely of Mrs. Stewart.   On December 16, 1921, the House of Providence took the child.   On December 29, 1921, a petition agreeable to Act No. 24, First Extra Session of 1921 (Comp. Laws Supp. 1922, § 2015), averring that the child was dependent and neglected, was filed in the probate court of Wayne county.   Thereafter a hearing was had in such court after due compliance with the statutory requirements respecting report by the probation officer or county agent, summons, and notice, at which hearing Mrs. Van Marter, Mrs. Stewart and others appeared with counsel and testified.   On January 26, 1922, the probate court found the child to be dependent and neglected and committed her to the House of Providence for the purpose of adoption. Thereupon Mrs. Van Marter began *habeas corpus* in the Wayne circuit, naming Hon. Henry S. Hulbert, judge of probate, Charles C. Chadwick, county agent, and Irene Cicotte, an officer of the House of Providence, as defendants.   It is said that there was also an accompanying writ of certiorari.   At the trial in the circuit court plaintiff had testimony of several witnesses tending to show that the child had had a good home with plaintiff and had been well cared for. Defendants had judgment.   Plaintiff has removed the cause to this court for review.

It was not necessary that a guardian *ad litem* be appointed for the child for the hearing in probate court.   See *King* v. *Sears*, 177 Iowa, 163 (158 N. W. 513) ; *State, ex rel. Raddue,* v. *Superior Court*, 106 Wash. 619 (180 Pac. 875).   The statute requires a summons to the person having the custody of the child and if the custodian be other than a parent or guardian the parent or guardian must have notice if he can be found, and it provides:

"The court shall notify the county agent or probation

officer making the preliminary investigation to attend said trial and act as custodian of said child."

And the county agent was charged with the "care and protection of dependent, neglected and delinquent children." 1 Comp. Laws 1915, §§ 2014, 2015. And Baby Betty was a ward of the court whose chief concern in the cause under the law was the welfare of the child.

These special proceedings in the probate court are not criminal. *In re Broughton,* 192 Mich. 418. Compliance with the statutory requirements as regards petition, report, notice, and summons gave the court jurisdiction in the case at bar. See *In re Paulson,* 212 Mich. 502. The proceedings were regular. The evidence and investigation gave ground to support the judgment of the probate court. The judgment is valid, not void, and the child is detained by virtue thereof. Hence no relief can be afforded on *habeas corpus.* See chapter 20, Stevens Mich. Practice, and cases there cited.

And on certiorari there being testimony to support the conclusion announced we will not examine it for the purpose of determining the facts. See *Smith* v. *Kiel,* 150 Mich. 417.

No appeal lies from a judgment of the probate court in these special proceedings. *Van Leuven* v. *Ingham Circuit Judge,* 166 Mich. 115; *In re Mendevil,* 21 Ariz. 586 (193 Pac. 17).

Judge Moynihan rightly held that plaintiff, if aggrieved by the judgment of the probate court having jurisdiction, should have sought the rehearing in probate court provided by Act No. 183, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 2023).

Judgment affirmed.

FELLOWS, J., concurred with CLARK, J.

WIEST, C. J. I cannot concur in the opinion of Mr.

Justice CLARK.    An examination of the proceedings had in the juvenile division of the probate court, certified here in response to the writ of certiorari, discloses a jurisdictional infirmity therein, and evident upon the face thereof, rendering the same wholly void.    This jurisdictional defect will be pointed out later in the opinion.    Such proceeding being void, it was error in the *habeas corpus* proceeding in the circuit court to hold the same *res adjudicata* of the right to the custody of Baby Betty.    It is important upon the question of the custody of Baby Betty at the time the proceeding was instituted in the juvenile division of the probate court to understand the circumstances under which she entered the home of petitioner and was, four years later, taken therefrom.

One day, during the great European War, a Catholic priest, in Detroit, urged his communicants to help the foundling hospital by taking and rearing a foundling. Elva Stewart, one of his listeners, moved by the appeal and a vision of a chubby, rollicking baby in her home, straightway visited Providence hospital in Detroit for the purpose of selecting such a cherub.    At the hospital, a Catholic sister, there in charge, brought to Mrs. Stewart, on a pillow, a month-old baby weighing less than three pounds, with its little life hovering at the very line of departure, and her vision of a bouncing baby gave way to pity for the puny and sickly estray, and she reasoned that her act would be more creditable if she took and reared such an one than a healthy baby, and she took the baby.    This was in November, 1917, and  constituted  Baby Betty's induction to the fostering care of Mrs. Stewart and her mother, petitioner herein, who nursed the tiny spark of vitality until strength became her portion and she the very life and happiness of the only home she ever knew.    Anna  Van Marter  is  the  mother  of Mrs. Stewart and has had the care and custody of Betty

and she is here asking that Baby Betty be returned to her.

December 16, 1921, Irene Cicotte, accompanied by a man in uniform, visited the home of Mrs. Van Marter, and, against her protest, took Baby Betty away. Irene Cicotte was an employee in the social service department of Providence hospital and claims that, at the direction of the hospital authorities, she took Baby Betty away from the home of Mrs. Stewart and returned her to the hospital. No proceeding was taken in the probate court until December 29, 1921, when a petition was filed by Coentha O'Brien of the bureau of Catholic societies, setting forth:

"said child is now in the custody of Mrs. Elva Stewart, 1620 Abbot street, Detroit, Mich., and who was of the age of four years on the 6th day of October, 1921, is a dependent and neglected child, within the meaning of the statutes of this State in this that said child is destitute, homeless and dependent upon the public for support; said child has not proper parental care and guardianship in this, to-wit: Elva Stewart, into whose care said child was placed by the House of Providence, of Detroit, Michigan, by reason of her acts of neglect, is not a proper person to have the custody of the person and the care of the education of said child, all of which is contrary to the statutes of this State."

Upon this complaint C. M. Sanders, probation officer, was ordered to investigate. On January 23, 1922, Olive O'Brien, probation officer, reported to the court, among other things:

"Betty Jane Hubert; date of birth, 10-6-17; age, 4; present address, 320 Belmont."

The same day a summons was issued to "Sister Olympia, care Providence hospital; Mrs. David Landau, 320 Belmont," reciting, among other things:

"Elva Stewart, into whose care said child was placed by the House of Providence, of Detroit, Michigan, by

reason of her acts of neglect, is not a proper person to have the custody of the person and the care of the education of said child,"

and commanding Sister Olympia and Mrs. Landau to have and produce Betty Jane Hubert in court on the 26th day of January, 1922.    This summons was duly served on Sister Olympia and Mrs. Landau.    A summons was also issued to Martha Hubert, the mother of Betty, but was returned unserved.    On the same day a subpœna was issued, directed to Elva Stewart, Anna Van Marter and Irene Cicotte to appear in court:

"on the 26th day of January, A. D., 1922, at 2 o'clock in the afternoon, then and there to give evidence in a certain matter now pending in the probate court, juvenile division, being the matter of Betty Jane Hubert, on the part of the people."

Under the petition filed a summons, instead of a witness subpœna, should have been issued to Elva Stewart.    The petition alleged that Baby Betty was in the custody of Elva Stewart.    Just why the summons was issued to Mrs. Landau is not clear unless we assume that on January 23d Baby Betty was with Mrs. Landau.

The petition filed, and the statute, required notice by summons to the person alleged therein as having the custody of Baby Betty.

The statute provides that upon the filing of the petition notice shall be given to the probation officer, who shall investigate the facts and circumstances and report the same to the court, and

"If, after a full investigation, it shall appear to the court that public interest and the interest of the child will be best subserved thereby, a summons shall issue reciting the substance of the petition and requiring the person having the custody and control of the child, or with whom the child may be, to appear with the child at a place and time which shall be stated in

the summons, and if such person is other than the parent or guardian of such child, then said parent or guardian shall be notified of the pendency of the case." Comp. Laws Supp. 1922, § 2015.

This court held, *In re Paulson*, 212 Mich. 502, that this statutory provision with reference to a summons is jurisdictional, and the purpose thereof is to notify the parent or person having the custody of the child, and the child herself of the charge made against her.

Mrs. Stewart was entitled to her day in court. She has not had it. The fact that Mrs. Stewart appeared in response to a witness subpœna and gave testimony and had an attorney in court did not cure the fault of no summons as to her. But it may be said that the report of the probation officer, made after the filing of the petition, disclosed that, on the day the summons was issued, Baby Betty was at 320 Belmont street. This may have called for a summons directed to the person living at that number but it did not excuse the court from issuing a summons, under the petition, to Mrs. Stewart. It would be a reproach to the law to hold that an interruption of the custody of Baby Betty, under the circumstances here disclosed, deprived Elva Stewart of the right to have a summons and to come in and be heard as a party to the proceeding and not as a mere witness. If Mrs. Stewart had been summoned, as she ought to have been, she would have had opportunity to employ counsel, and to be heard as a party to the proceeding and to apply, under the statute, for a rehearing.

The probate court acquired no jurisdiction, under the summons issued to persons not mentioned in the petition, and contrary to the allegation of the custody of Baby Betty averred in the petition. If this child was neglected and dependent, it was through the neglect of Mrs. Stewart and, surely, Mrs. Stewart had a right to be summoned into court upon that question. The proceeding in the probate court was void. The

testimony given in the circuit court tended to show that Anna Van Marter is a proper person to have the care and custody of Baby Betty.

The determination made in the circuit court is reversed, and the proceeding in the probate court, juvenile division, is set aside, and it is ordered that Baby Betty be conducted back to the home and custody of Anna Van Marter without prejudice to further proceedings.

McDONALD, BIRD and STEERE, JJ., concurred with WIEST, C. J.   MOORE, J., did not sit.

### ON REHEARING.

CLARK, J.   Hon. Henry S. Hulbert, judge of probate, juvenile division, of Wayne county, petitioned for rehearing in this cause and for leave to add to the record material facts omitted therefrom.   The petition was granted.   The facts are now fully before us.   Counsel for Judge Hulbert has summarized, chronologically, important facts in the case, as follows:

"1917.

Oct.  6. Betty Hubert born in Toledo.
           Brought to Providence hospital when two weeks old.

Oct. 18. Martha Hubert, mother, releases Betty to 'Catholic Home of City of Detroit.'

Nov.  8. Child placed by House of Providence with Daniel and Elva Stewart 'on trial only' for adoption.

1920.

Apr.  9. Stewarts were divorced.

1921.

Mar.  9. Elva Stewart filed petition with probate court for adoption of Betty.

Mar. 19. County Agent Chadwick ordered by court to investigate Elva Stewart's home, etc.

Mar. 28. County agent reports to court disapproving home.

Apr. 21. Order entered by Edgar O. Durfee, judge of probate, denying adoption.

Dec. 16. Two agents of House of Providence, on order of county agent, retake child from Elva Stewart, and take her for temporary care to Helen Landau.

Dec. 29. Petition filed to have Betty Hubert declared dependent.   Order issued by court to probation officer to investigate case and report.

1922.

Jan. 23. Report of probate officer and case history filed.

Summons issued to Mrs. Landau (in whose custody child was) to House of Providence, having control, and to Martha Hubert, mother.   Subpoena issued to Elva Stewart and Anna Van Marter.

Jan. 26. Hearing on petition.

Order committing Betty to House of Providence for adoption.

Feb.   1. Anna Van Marter petitions circuit court for *habeas corpus* for Betty.

Feb.   7. Judge Hulbert and Agent Chadwick sign return to writ.

Feb.

6. 7, 8. Hearing on *habeas corpus* in circuit court.

May   9. Circuit court opinion denying writ signed.

May   9. Judgment of circuit court in *habeas corpus*."

The petition filed to have the child declared dependent recited that she "is now in the custody of Mrs. Elva Stewart."   Act No. 24, Pub. Acts, 1st Extra Session, 1921 (Comp. Laws Supp. 1922, § 2015), upon the filing of the petition required that—

"Upon the filing with the court of a sworn petition * * *, the court shall, before any further proceeding is had in the matter, give notice thereof to said county agent or to a duly appointed probation officer, who shall have opportunity allowed him to investigate the facts and circumstances surrounding the case, and upon receiving such notice the said officer shall immediately proceed to inquire into * * * and report the same to the said court in writing.   If, after a full investigation, it shall appear to the court that public interest and the interest of the child will be best

subserved thereby, a summons shall issue reciting the substance of the petition and requiring the person having the custody or control of the child, or with whom the child may be, to appear with the child at a place and time which shall be stated in the summons, and if such person is other than the parent or guardian of such child, then said parent or guardian shall be notified of the pendency of the case." *  *  *

Due notice was given to a probation officer, who made investigation and reported that after the child had been taken from Mrs. Stewart on the order of the county agent she had been placed in the home of Helen Landau, in whose custody she then was. Summons was issued as stated. The statute does not require notice by summons to the person alleged in the petition as having custody of the child. It requires notice by summons to "the person having the custody or control of the child, or with whom the child may be."

Summons does not issue as of course as in most cases. A condition precedent is the investigation and report of the probation officer or county agent. The court may not ignore such report of facts respecting the then custody of the child. It is urged that a summons should have been served on Mrs. Stewart. But she is not complaining and is not a party to this record. We ought not to proceed on the theory that she is the plaintiff here. Anna Van Marter was not a necessary party in the proceeding in the probate court. No one contends that she was. Yet she, and not Mrs. Stewart, sued out the writ of *habeas corpus* in the circuit court and the writs here. Her lack of right to relief here is so apparent that it requires no discussion. On this record we should hold that the probate court had jurisdiction of the cause and that its order is valid.

But, apart from statutory and jurisdictional questions, the welfare of the child demands that she be not

conducted back into a home which has been disapproved by the county agent and from which home she has been taken on his order.

Judgment affirmed.

FELLOWS, McDONALD, and SHARPE, JJ., concurred with CLARK, J.

WIEST, C. J.    In our former opinion we pointed out fatal defects in the proceedings and directed Baby Betty to be returned to the custody from whence, in fact, she was taken, and this without prejudice to the institution of new proceedings in accordance with the statute.

We adhere to that opinion.

BIRD, MOORE, and STEERE, JJ., concurred with WIEST, C. J.