[No. 18735.  Department One.  July 31, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Lizzie Miller, Plaintiff,* v. SUPERIOR COURT FOR LEWIS COUNTY, *W. A., Reynolds, Judge, Respondent.*[1]

CERTIORARI (26)—RETURN—CONCLUSIVENESS.  The return for a writ of certiorari will be accepted upon all controverted points, where the matter is in dispute and the witnesses are divided and reputable.

INFANTS (5)—JUVENILE DELINQUENTS—PROSECUTIONS — JURISDICTION—COMPLAINT AND NOTICE.  To give the juvenile court jurisdiction to take a minor child from the custody of its mother and sentence it to the state training school, a petition must be filed and summons issued and served, giving at least twenty-four hours notice, as required by Rem. Comp. Stat., §§ 1987-5, 1987-6; and no waiver by the person having custody of the child should be recognized unless based upon full knowledge and clearly voluntary.

Application filed in the supreme court, May 31, 1924, for a writ of certiorari to review a judgment of the superior court for Lewis county, Reynolds, J., entered May 20, 1924, committing a delinquent minor to the state training school.  Granted.

*Gus L. Thacker,* for plaintiff.

*J. H. Jahnke,* for respondent.

TOLMAN, J.—This is an original proceeding in this court, in which petitioner seeks a writ of certiorari for the review of a proceeding in the superior court for Lewis county, which eventuated in an order committing Lutian Miller, a boy eleven years of age, to the state training school.

Just what occurred leading up to the order complained of is in dispute, and therefore, under the rule announced in *In re Geissler's Estate,* 99 Wash. 452, 169

[1] Reported in 227 Pac. 849.

Pac. 822; *State ex rel. Russell v. Superior Court,* 113 Wash. 253, 193 Pac. 678, and *State ex rel. Davis v. Superior Court,* 114 Wash. 335, 195 Pac. 25, the return of the trial judge will be accepted on all controverted points, the witnesses being divided and reputable.

On the afternoon of May 19, 1924, petitioner Lizzie Miller and her son, Lutian Miller, together with the city superintendent of the Centralia schools, and the principal of the Lincoln school of that city, appeared before the respondent judge, sitting as the juvenile department of that court. The school authorities stated that the boy was charged with breaking and destroying a large number of window lights in the Lincoln school building; that the school authorities could not properly deal with and discipline the child because his mother sustained him in disobeying the rules of the school and defying the authority of the teachers. Both sides informally presented the matter, and because of their disagreement as to the facts, and the conflict in their statements, a regular and formal hearing appeared to the judge to be necessary; whereupon he directed that a complaint be made and filed, and the case be set down for hearing thereon at a time satisfactory to all concerned; that both Mrs. Miller and the school authorities requested that the case be set for hearing on the following day, saying that all the witnesses would then be produced, and it was so ordered. On May 20, 1924, a written complaint was made, verified by one of the school officers, and on that day the complaint was filed with the clerk of the court. Later, on the same day, the parties appeared, a hearing was had, and the order complained of was entered, which was followed, after application had been made to this court, by the entry of an amended order more fully reciting the facts.

Petitioner, by her affidavit, asserts, and these assertions are undenied, that she is a widow fifty-three years of age, the mother of four children whom she supports with great difficulty by washing for others, wholly ignorant upon legal matters and court procedure; that no notice of any kind of any hearing was ever served upon her, but that she and her son were taken by the school authorities before the judge in the first instance, and again on the next day the mother had been at work washing at the home of another until noon, when she returned home for lunch, and was there with her son picked up and taken in an automobile by the same authorities to court; that she did not understand or realize that a trial was to be had which might result in her son being sent to the training school, or in any manner taken from her custody and control; and that, if she had so understood and realized, she would have consulted others, procured advice and counsel, and prepared to meet the situation as adequately as possible.

A petition or complaint must be made and filed in such cases (§ 1987-5, Rem. Comp. Stat.) [P. C. § 597], in order to give the court jurisdiction, and § 1987-6 [P. C. § 598], provides that, upon the filing of such a petition or information, summons shall be issued by the clerk requiring the person having the custody of the child "to appear with the child at a place and time stated in the summons, which shall not be less than twenty-four hours after service." In *State ex rel. Raddue v. Superior Court,* 106 Wash. 619, 180 Pac. 875, it was said:

"It is the design of the statute that there shall be no hearing in the absence of some proper person to assist and represent the child. In this case, the notice and summons were addressed to and served upon plaintiff, the mother of the child, at the family home in Seattle on February 14, 1919, three days prior to the

date fixed and noticed for the hearing. The summons gave notice of the place, date, and hour of the hearing, and commanded plaintiff to appear and resist the same if she saw fit and to have the child with her at the time and place named. Her petition in this court shows that, pursuant to the notice and summons, she did take the child to the superior court at the time of, and for the purposes of, the hearing on February 17th, and the whole record fails to suggest any incompetency of the boy's mother, his natural custodian, to act in his behalf, after having two days' more notice of the hearing than the minimum time provided by the law.''

Clearly that is not this case. If the summons had been served upon this mother, in all probability that formal document would have tended to bring home to her the seriousness of the situation in a way that no spoken words were likely to do; and with such a document in hand, and with twenty-four hours for reflection, she, all the more because of her ignorance as to legal proceedings, would have been likely to have sought counsel and advice.

It is a serious matter to take a child of such tender years from the control of his natural guardian and place him in a state institution, no matter how well conducted, where he may remain until he attains the age of twenty-one years. The statute is drastic, as perhaps the necessities require; but that is the more reason why in every case care should be exercised to see that, for the child's sake (it being without legal capacity to protect itself), a full and fair hearing is accorded, and both the letter of the law and its spirit are fully complied with.

We do not intend, by anything here said, to limit the rule as to voluntary appearances as generally applied; but, where the rights of a minor are concerned, great care must be exercised to prevent any unwarranted or unauthorized waiver. Though the statute makes serv-

ice upon the person having the custody sufficient, no waiver by that person should be recognized unless based upon full knowledge, and clearly voluntary in the broadest sense of that term.

The writ will issue as prayed for.

MAIN, C. J., HOLCOMB, MACKINTOSH, and PARKER, JJ., concur.