[No. 32249.    Department Two.    January 9, 1953.]

*In the Matter of the Welfare of* ROBERT WAYNE JONES *et al.,* MINORS.[1]

[1]Reported in 252 P. (2d) 284.

*James Tynan,* for relator.

*Charles F. Stafford, Jr.,* and *Reuben C. Youngquist,* for respondent.

HAMLEY, J.—This case comes here on certiorari to review an order of the juvenile court of Skagit county. The order, dated July 28, 1952, relates to the custody and support of two minor children who have been wards of the state since July, 1948. Relator is the father of the children.

The children were temporarily made wards of the state pursuant to an order entered on July 6, 1948. At that time, the father and mother were separated and a divorce action was pending which has since culminated in a final decree of divorce. In the 1948 order, the minors, then aged eight and seven years, respectively, were found to be dependent children. The court directed that the children be remanded to the custody of the Skagit county welfare department (welfare department) for placement in a suitable home or institution. The court, however, reserved jurisdiction over the welfare of the children.

No review of the order of July 6, 1948, was undertaken, and it became immediately effective. The welfare department made arrangements for the placement of the children in the Parkland Lutheran Children's Home, in Snohomish county. On February 26, 1951, relator applied for a writ of *habeas corpus* in an attempt to regain custody of the children on the ground of changed conditions. After a hearing on that writ, the trial court entered findings to the effect that it would not be for the best interests of the children to permit the father and his mother to have their custody and care. The writ was therefore quashed by an order dated

March 26, 1951. We affirmed by *per curiam* opinion. *Jones v. Crompton*, 39 Wn. (2d) 961, 235 P. (2d) 825.

The instant proceeding was instituted on April 4, 1952, when the probation officer of the Skagit county juvenile court filed a supplementary petition in the original juvenile court matter, asking that the court approve a new custodian for the children and require the father to contribute to their support. The probation officer was moved to file this petition because of the desire of the Lutheran Children's Home to be relieved of the care of the children. A hearing was held, at which both parents appeared and were represented by counsel. During the hearing, the issues were, without objection, broadened to include questions relating to the father's request for custody of the children and the parents' right of visitation. The result was the issuance of the order of July 28, 1952, here under review.

This order provides, among other things, that the children should not be returned to either the permanent or temporary custody of relator. Relator contends that the court erred in not requiring that the children be returned to his permanent custody.

■ The only way in which the juvenile court could have returned the children to the permanent custody of the father would have been to declare the children no longer wards of the state, thereby terminating the juvenile court's jurisdiction. Under the juvenile court act, no child may be made a ward of the state unless it shall have been found to be a delinquent or dependent child. RCW 13.04.020 (Rem. Rev. Stat., § 1987-1); *In re Miller*, 40 Wn. (2d) 319, 242 P. (2d) 1016. The 1948 order declaring these minors to be wards of the state was based upon a finding that they were dependent children. It follows that their status as wards of the state could not be terminated and permanent custody given to the father except upon a finding that the minors are not now dependent children.

The juvenile court did not so find. Instead, it entered findings to the effect that there had been no material change in conditions relative to dependency since the 1948 and

1951 orders, and that the minors remain dependent children and therefore wards of the state.

Relator contends that these findings are not supported by the evidence. It is argued that the juvenile court should have considered the matter anew, without reference to the 1948 and 1951 findings, that the probation officer had the burden of proof to show that the minors are now dependent children, and that this burden was not sustained.

In our view, the juvenile court followed the proper procedure. The facts which would be necessary to support a finding that these minors are dependent children were established in the 1948 order, which was not reviewed, and the 1951 order, which we affirmed. The burden was therefore upon relator to prove that there had been such a material change in these facts that a finding of dependency would no longer be warranted. We have examined the evidence and are satisfied that the juvenile court did not err in finding that relator failed to sustain this burden. No useful purpose would be served by analyzing the evidence in this opinion.

It is relator's further contention, however, that if the evidence does not warrant return of the children to the permanent custody of the father, he at least should have been awarded their temporary custody for an experimental period.

In the order of July, 1948, the juvenile court based its ruling that the dependent children should be removed from the custody of the parents on the finding that the parents failed to provide the children with proper supervision, training, and education. The March, 1951, order in the *habeas corpus* proceeding contains substantially the same finding, and also a finding that the welfare of the children still requires that they be not returned to the custody of relator. These findings are repeated as a part of the order now before us, and on the basis thereof the juvenile court ordered that the children be not returned to relator's temporary custody. The latter findings are sufficient to support

this provision of the order. See RCW 13.04.140 (Rem. Rev. Stat., § 1987-14); *In re Miller, supra.*

Relator asserts that the findings to which reference has just been made are contrary to the clear preponderance of the evidence. Our review of the record convinces us, however, that the findings in question are amply supported by the evidence.

Our attention is next directed to the following provision of the order of July 28, 1952:

"IT IS FURTHER ORDERED That the two said minor children shall remain under the care and custody of the Skagit County Welfare Department, subject to the supervision of the Probation Officer of this Court. The said Skagit County Welfare Department shall have the authority to supervise the welfare of the said minor children, place them in approved foster homes or institutions and change their placement from time to time as may be necessary until further order of the Court."

Relator attacks this provision on several grounds, the first being that the law does not contemplate the placing of dependent children under the care and custody of a county welfare department.

Under the act relating to aid for dependent children, a county welfare department, acting as agent of the state department of social security, has authority to accept the custody and provide for the care of children under certain circumstances. See RCW 74.12.080 and 74.12.130 (Rem. Rev. Stat. (Sup.), § 9992-112, part, and Rem. Supp. 1947, § 9992-106, respectively). But the "delinquent and dependent children" with whom we are here concerned are not those referred to in the above act. Rather they are those referred to in the juvenile court act. Hence we must look to the latter act to determine the authority of the juvenile court to commit delinquent and dependent children.

The juvenile court act provides that such children may be committed to: the care or guardianship of a probation officer, with provision for the children to remain at their own home or be placed in a suitable family home; some suitable institution for the care of delinquent or dependent

children; the care and custody of some association embracing in its objects the care of neglected, delinquent, and dependent children; the care of some reputable citizen of good moral character; or the care of some training or industrial school, as provided by law. RCW 13.04.090 and 13.04-.100 (Rem. Rev. Stat., §§ 1987-10 and 1987-8, respectively).

A county welfare department is not a probation officer, institution, association, citizen, or school, as those terms are used in the juvenile court act. It follows that the juvenile court may not commit a delinquent or dependent child to a county welfare department. The order under review should therefore be modified to withdraw relator's children from the care and custody of the welfare department and commit them to the care, guardianship, or custody of a person or organization of the kind described in the statutes referred to above.

■ Relator next contends that the provision of the order quoted above is invalid because it vests authority in a person or organization other than the juvenile court to place the dependent children in foster homes or institutions and to change their placement from time to time.

We do not know in whose temporary care and custody the children may be placed when the order is modified in accordance with the direction given above. Whoever that may be, however, if it is thereafter desired to change the placement of the children, the juvenile court should, by order entered prior to such change, transfer the actual care and custody of the children to the person or agency which is to have immediate charge of such children.

Relator advances these additional reasons why the provision of the order authorizing a change in the placement of the children is invalid: It was incumbent upon the juvenile court to appoint a guardian *ad litem* to represent the children before changing their placement; the parents were entitled to be heard with respect to the particular change of placement which was proposed; the probation officer had the burden of proving that the change in placement would

be in the best interests of the children; and the probation officer failed to sustain this burden of proof.

■ It is provided in RCW 13.04.070 (Rem. Rev. Stat., § 1987-6) that the judge "shall appoint" some suitable person or association to act in behalf of the child. This provision relates only to an original proceeding involving a determination of whether the minor is a delinquent or dependent child. Moreover, the judge has the duty of appointing such person or association to act for the child only where the child's guardian or parents are not present. *State ex rel. Raddue v. Superior Court,* 106 Wash. 619, 180 Pac. 875.

The instant case is not an original proceeding of the kind mentioned; and, in any event, the parents were present. In addition, the probation officer, who is authorized by law to represent the interests of the child in proceedings before the juvenile court, was present. See RCW 13.04.040 (Laws 1951, chapter 270, § 1, p. 883). Hence the court did not err in failing to appoint a guardian *ad litem.*

■ The parents of a child are entitled to notice and an opportunity to be heard before such child may be declared a delinquent or dependent child, and so a ward of the state. RCW 13.04.070. The juvenile court act, however, contains no provision requiring that the parents be notified and have an opportunity to be heard at any subsequent proceedings had for the purpose of determining whether the placement and custody of a delinquent or dependent child should be changed. While the juvenile court may, in its discretion, afford the parents an opportunity to be heard, they are not entitled to a hearing as a matter of right, and have no appealable interest in an order temporarily changing such placement and custody.

■ The change in placement and custody of a minor already declared to be a delinquent or dependent child is an act to be performed by the juvenile court with the assistance of the probation officer and, in many cases, the county welfare department. There is no requirement for a hearing, no burden of proof placed upon the probation officer, and no basis

for a review of the evidence in this court. Whether, in the event placement and custody is changed to a person or organization not authorized by law, the parents have a remedy by *habeas corpus* or otherwise, is a question which is not before us.

■ Relator takes issue with the provision of the order which requires him to pay fifty dollars a month to the welfare department for the care and support of the children. Relator argues that it is not fair to deprive a father of all but a very limited visitation right and yet require him to pay for the children's support.

Enforced payments from parents for the support of such children depend upon the need of the children and ability to pay. RCW 13.04.100. They are not a *quid pro quo* for the right of visitation. There is no contention here that the father is unable to pay fifty dollars a month, or that this monthly sum is not needed for the support of the children. The court did not err in fixing the monthly support payments at fifty dollars.

■ Relator also argues, however, that the juvenile court should not have ordered that these support payments be made to the welfare department.

This objection to the order is well taken. There is no provision in the statutes authorizing the welfare department to accept support payments from the parents or guardian of a delinquent or dependent child. The order should be modified to provide that the payments be made to the clerk of the court for transmittal to the person, association, institution, or school in whose care the children are placed.

■ The provision of the instant order relative to visitation rights is also brought into question by relator. This provision reads as follows:

"It Is Further Ordered That until further order of the Court the Skagit County Welfare Department, in cooperation with the Probation Officer of this Court, shall have the authority to make rules of visitation which shall be followed by the parents of said children. Such rules may be changed from time to time as deemed necessary for the welfare of the children. Such rules shall be in writing and

furnished to each of the parents. The parents of the children shall comply with said rules of visitation on all of their visits with the children."

When delinquent or dependent children have been committed to the care and custody of others, the parents or guardian retains the right to visit such children at reasonable times and places to the extent consistent with the welfare of the children and the proper operation of the home, institution, or school where the children are placed. Rules relating to visitation are to be formulated with this objective in mind. It is therefore necessary that such parents or guardian have a forum in which to air their grievances, in the event such rules, or the interpretation and enforcement thereof, violate this principle. This can be assured only if all rules of visitation and changes therein are promulgated by order of the juvenile court. This, we believe, is what is contemplated by the juvenile court act.

The guardian or parents are not entitled to notice or hearing as a matter of right before the promulgation of such rules. In the performance of this function, the juvenile court is, of course, free to solicit and receive the recommendations of the parents or guardian, probation officer, and the welfare department.

The instant order should be modified by setting out therein the rules of visitation to be applied, or by authorizing the probation officer, with or without the co-operation of the welfare department (whichever the juvenile court prefers), to formulate and submit, for later court approval, proposed rules of visitation.

Finally, relator contends that the court erred in denying his motion for a new trial. Two grounds for the motion were urged, one being that, since the hearing, the children had been placed in a foster home, after which relator was denied all right of visitation except one hour a week under close supervision.

These were developments subsequent to the hearing at which the oral decision was announced, and relator's affidavits concerning such developments were not served upon

the prosecuting attorney until immediately before the motion for new trial was made. The motion was therefore properly denied. As provided herein, the order under review is to be modified with respect to rules of visitation.

Relator's second ground for a new trial is newly discovered evidence. In support of this ground, relator produced an affidavit of Dr. Paul R. Newkirk, pertaining to relator's treatment and mental condition while at Northern State Hospital, Sedro Woolley, Washington, in October, 1944. The purpose of this affidavit was to counter findings in the two previous orders and the instant order regarding relator's mental condition.

The affidavit in question was first produced at the time the motion for new trial was made. So far as the record discloses, Dr. Newkirk has been available for testimony at all times since 1944. It is therefore apparent that the affidavit does not disclose "newly discovered" evidence which relator could not, with reasonable diligence, have discovered and produced at the trial. See Superior Court Rule 16, 34A Wn. (2d) 117. In any event, our examination of the affidavit leads us to believe that it does not, in any material respect, counteract the findings of the instant and previous orders regarding relator's mental condition. The trial court did not abuse its discretion in denying the motion for new trial.

The order is reversed and the cause remanded, with directions to modify the order in accordance with the views expressed in this opinion. Neither party shall recover costs in this court.

SCHWELLENBACH, C. J., GRADY, FINLEY, and OLSON, JJ., concur.