[No. 32453. Department Two. November 20, 1953.]

*In the Matter of the Welfare of* ERNEST WALKER *et al., Minors.*

THE STATE OF WASHINGTON, *on the Relation of Robert Walker, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *William J. Wilkins, Judge, Respondent.*[1]

[1]Reported in 263 P. (2d) 956.

*Mary E. Burrus*, for relator.

*Howard A. Adams*, for respondent.

FINLEY, J.—This matter comes to us on the petition of Robert Walker for a writ of certiorari to review an order of the juvenile court for King county, which order temporarily awarded custody of Ernest Walker and Terry Rose Walker, minor children, to their mother, Mrs. Evelyn Walker Saunders. The order indicated that temporary custody would be for a period of one year; that, assuming no change of conditions, permanent custody then would be awarded to the mother. The father was required to contribute monthly to the support of the children.

Robert Walker and Evelyn Walker were married on May 29, 1945. Ernest Walker, a son, was born on March 30, 1949; Terry Rose Walker, a daughter, was born on November 7, 1950. The record before us indicates that, initially, Robert Walker denied he was the father of the first child, but, thereafter, admitted paternity. He still questions whether he is the father of the little girl.

There can be no doubt that the marriage was anything but a happy one. Shortly after the birth of the daughter, the parties concluded it would be best for them to separate. Robert Walker took the son, and Evelyn Walker took the daughter.

The mother secured employment to earn her living and placed the daughter in the care of a boardinghouse mother. The daughter became ill, and the boardinghouse mother, unable to locate Evelyn Walker, summoned the police, and the child was taken to Harbor View Hospital. Proceedings were then instituted to have both children declared to be dependent, within the meaning of the juvenile court act. A hearing, on notice, was had, and Robert Walker, by written agreement dated February 8, 1951, agreed "to have said children made wards of the King County Juvenile Court and placed in the temporary custody of the Catholic Children's Bureau." The juvenile court found the children to be dependent and committed them to the temporary custody of the Catholic Children's Bureau until further order of the court, and provided that Robert Walker should pay a stated monthly sum toward their support.

In a subsequent divorce proceeding, each party was granted a divorce from the other. The decree did not give custody of the children, or either of them, to either of the parents. It provided that the children should remain in the custody of the juvenile court until further order of that court. Neither of the parties to the divorce action appealed from any portion of the divorce decree. Subsequent to the divorce, Evelyn Walker married a Mr. Saunders. The record shows she is living with him and taking care of his two children by a former marriage.

On August 1, 1952, Robert Walker petitioned the juvenile court for custody of his son, Ernest. He proposed that he would care for the boy either by placing him in a boarding home or by placing him with the child's paternal grandparents in California. As to Terry Rose, the petitioner stated that, although he questioned whether he was her father, he wished to consent to the little girl being placed for adoption. The petition did not come on for hearing before the juvenile court until February 18, 1953.

On March 9, 1953, the juvenile court entered the order which is here for review. After reciting that Evelyn Walker Saunders was found to be a good and fit mother, that the Saunders' home was conducive to a good and happy family

life, and that the best interests or welfare of the minor Walker children would be served by placing them in the home of their natural mother, it was ordered:

"That the *temporary* physical custody of Ernest D. Walker and Terry Rose Walker be . . . awarded to Evelyn M. Saunders, the said children to remain as wards of the Juvenile Court;

"SECOND—That the Judge signing this order retains personal jurisdiction for a period of one year and such further time as may be required, at the end of which period he will sign a permanent order terminating the status of said children as wards of the court and awarding permanent custody of said children to Evelyn M. Saunders, their mother, PROVIDED that he is then still satisfied that the home is a good one from the standpoint of the welfare of said children;

"THIRD—With the concurrence of the Hon. William G. Long, Mrs. Helen R. Harris of the Juvenile Court Staff is hereby appointed to investigate the conditions in the home of Mrs. Saunders during the ensuing year at such times as she deems advisable and make a final report to this said Judge at the end of the one year period—copies to be given also to counsel for both parties." (Italics ours.)

Further provision was made for visitation rights and support-money payments by Robert Walker and for a hearing, on notice, to determine *permanent* custody, after the one year from March 9, 1953, the date of the order.

Subsequently, the court denied Mr. Walker's motion for a new trial and also denied his motion to reopen, or, in the alternative, to reconsider the decision. As indicated heretofore, we granted Mr. Walker's petition for a writ of certiorari to review the order of the juvenile court judge.

When this case was before the superior court, the judge who heard the matter expressed the view that he was functioning in the capacity of a juvenile court judge. We agree. In this connection, it seems desirable to consider briefly the matter of the respective jurisdictions of the juvenile court and the divorce court relative to the matter at hand. RCW 26.08.110, in so far as divorce decrees are concerned, among other things, provides:

". . . [the court] *shall make provision* . . . for the custody, support and education of the minor children of

such marriage. Such decree as to . . . the care, custody, support and education of children may be modified, altered and revised by the court from time to time as circumstances may require. . . ." (Italics ours.)

Generally speaking, the above-quoted statute indicates that the divorce court is under a clear and compelling duty to dispose of the custody of minor children—at least as between the contending parents. Unquestionably, the statute imposes heavy responsibilities and requires that extremely difficult decisions must be made by divorce courts. On the other hand, it does not demand the impossible.

Incidentally, in view of the circumstances apparently facing the divorce court at the time of the Walker divorce decree, any order it might have made would have been a conditional one, pending or subject to termination of the dependency status of the children. Furthermore, any such order of the divorce court awarding custody to one parent would necessarily have been based upon circumstances existing at the time of the order. Such circumstances, conceivably, might change significantly with the passage of time before termination of the status of dependency. Considering these aspects of the problem, it might be argued fairly convincingly that, *in the case at bar*, the divorce court followed the better practice in not deciding the matter of permanent custody as an abstract legal question between the parents, in not entering an ineffectual, futile order, and in postponing any decision as to custody (other than the order actually made by the court) until after termination of the dependency status of the children, at which time a decision by the divorce court could be effective and considerably more realistic.

In any event, in the Walker divorce proceedings, apparently in view of existing conditions and considering the best interests of the children, the court was reluctant to award custody to either parent. Seemingly, the only practical alternative was to leave them in the custody of the juvenile court. This was done. There was no appeal from the action of the divorce court. Hence, there is no question before us now as to the propriety of the divorce court's action.

 Now to refer backward, chronologically, for a moment: When, prior to the Walker divorce decree, the juvenile court by its 1951 order found that the children were dependent within the meaning of the juvenile court act, this finding of the required jurisdictional fact gave the juvenile court jurisdiction over the children. RCW 13.04.020. Furthermore, that initial acquisition of jurisdiction was a continuing one, to be exercised for the welfare and in the best interests of the children. RCW 13.04.090. Thus, in so far as the instant case is concerned, certainly, in the absence of any affirmative action by the divorce court conflicting with the action of the juvenile court, there can be no question that the power of the juvenile court to perform its statutory functions as of the time of its order of March 9, 1953, was terminable only upon the termination of the status of dependency of the Walker children. *In re Jones*, 41 Wn. (2d) 764, 252 P. (2d) 284. It seems inescapable that, in the instant case, the juvenile court of King county did not lose jurisdiction of the children merely by virtue of the subsequent intervening divorce proceedings between the parties.

Before going further, it may be desirable to point out that the decision of the juvenile court regarding the matter of the award of temporary custody to Mrs. Walker, and the hearing in connection therewith, *need not necessarily control any subsequent decision as to permanent custody or hearing thereon by the divorce court.*

 In discussing the next question of whether the juvenile court erred in continuing the dependency status, it is pertinent to observe that an existing ability or capacity of parents adequately and properly to care for their children is inconsistent with a status of dependency. The juvenile court's order of March 9, 1953, continued the status of the children as wards of the court. This clearly implies a dependency status and a finding by the court to that effect. In other words, from the testimony adduced at the hearing, the court was not convinced that Robert Walker could adequately and properly care for the children; and further, the court had at least some lingering doubt as to whether the children could be adequately and properly cared for by

the mother, Evelyn Walker Saunders. The result was, as indicated heretofore: The dependency status of the children was continued, and only *temporary custody* was given to the mother. From our review of the record, we are not convinced that either the father or the mother made a showing that was clearly inconsistent with a status of dependency on the part of the children. Consequently, we will not reverse the decision made by the juvenile court, continuing the children as wards of the court.

We will now consider whether the juvenile court erred in awarding temporary custody to the mother. As mentioned above, the father proposed that Terry Rose be placed for adoption and that Ernest be placed in a boarding home in this jurisdiction or with the paternal grandparents of the child, living in California. There seems to be no question regarding the propriety of the juvenile court's order awarding temporary custody of the little girl to the mother. As to Ernest, the situation is somewhat different. The report of the California authorities shows the paternal grandparents to be good people. However, the grandmother is sixty-five years of age and the grandfather is sixty-six. Placement with the grandparents would separate the two children and would remove Ernest from this state and from possible visitation by the mother. Either alternative proposed by the father as to Ernest would separate the two children—Ernest might or might not be placed in another boarding home, and with strangers. It was not clear whether the father would move to California to be near or with Ernest.

In support of the petition for certiorari, the father contends that:

" . . . competent and independent proof . . . [was] made that the mother has committed adultery, drinks, has given false testimony under oath, used vile language in the presence of the said minor children, and not even visited the children over a long period of time."

The evidence adduced by the mother offered an explanation of her questionable conduct. There was evidence by acquaintances and a relative of the mother that the

Saunders' home is a good one, and that Mrs. Saunders has been a good mother for the two children of Mr. Saunders by his former marriage. In this respect, we think the testimony of Mrs. Helen Harris, a probation officer of the juvenile court, is particularly significant. She stated that on three visits to the Saunders' home, she had found a warm and friendly atmosphere in so far as the two children of Mr. Saunders were concerned. Incidentally, a new baby daughter was born on March 22, 1952, of the marriage between Evelyn Walker and Mr. Saunders.

We do not believe the evidence preponderates against the findings of the juvenile court supporting the court's conclusions and the order awarding temporary custody of Terry Rose and Ernest to their mother, Mrs. Saunders. The evidence as to the question of her fitness was conflicting. The court accepted the version favorable to her and rejected the contrary version, which would have been favorable to the contentions of Mr. Walker.

We have expressed on numerous occasions a reluctance to reverse the findings of the trial court. The proposition that findings will not be reversed, unless the evidence clearly preponderates against them, has been stated so many times that no citation of authorities is necessary here. We decline to disturb the juvenile court's order in so far as it awarded temporary custody to Mrs. Saunders.

We are concerned (1) with the provisions of the order providing that the temporary custody granted to the mother would continue in effect absolutely for a period of one year; and (2) with the provision that, in the event of no change of conditions, permanent custody would be awarded to her at the end of one year by the juvenile court. Dependency is not necessarily or conclusively predictable in advance, even for a period of one year. In this respect, the choice of language in the juvenile court's order may be unfortunate. Actually, the power of the juvenile court in this case to provide for the temporary custody of the children is coexistent only with a continuation of a status of dependency. While neither parent, upon slight or imaginary pretext, should be encouraged to question the depen-

dency status of the two children at any time convenient to such parent—because normally it would certainly not be too good for the children to be shunted about willy-nilly—nevertheless, it seems to us that neither parent should be denied a reasonable opportunity to make a sound and convincing showing that dependency no longer exists; furthermore, that the question of dependency could reasonably be raised even during the one-year period that the juvenile court ostensibly gave temporary custody to the mother.

In other words, if either parent, within the one year, can make a sound and convincing showing that the children are no longer dependent, the juvenile court's authority to continue them as wards of the court would terminate. Upon such termination, the matter of the permanent custody of the two children, as between the contending parents, would then lie within the power of a court of general jurisdiction —in this case, the divorce court. Permanent custody, subject only to changed conditions in the future, would be a matter to be determined by the divorce court.

■ Here again, the controlling consideration would be the welfare of the children rather than any claim of legal, vested, priority, or other rights as between warring parents. We might observe that, since judges of our juvenile courts function also as judges of our courts of general jurisdiction (including the divorce courts), we can see no objection to an application for determination of permanent custody being made simultaneously with a petition that might be made in the future by either parent, respecting the termination of the dependency status of the children by the juvenile court. In fact, both determinations might better be made by the same judge, assuming both matters are presented properly and simultaneously. The merit in this lies in the fact that it could avoid unnecessary litigation and further delay, and result in a saving of court costs and attorney's fees as to both parents.

In this certiorari action, Robert Walker contends, (a) that *permanent custody* was given to Evelyn Walker Saunders, and (b) that he has been deprived of custody without the requisite finding of unfitness on his part. Neither point is

well taken. The order of March 9, 1953, clearly indicates that *temporary custody* was given to the mother. In many custody cases, both parents are found to be fit persons to have custody, but custody cannot be awarded to both. Of necessity, it is awarded to one parent. Certainly, the loser cannot claim a finding of unfitness as to him is requisite before the court can award custody to the other. As emphasized heretofore, the welfare of the children is the important and controlling factor.

We gather from the record that the juvenile court judge apparently felt the mother was a good and fit person to have custody of her children, irrespective of adverse testimony, which, among other things, indicated disinterestedness on her part as to the children's welfare during the period after they were placed in the care of the Catholic Children's Bureau. Also, the court apparently was not influenced by any question raised concerning the willingness and ability of Mrs. Saunders' present husband (earning approximately eighty dollars per week) to care for the Walker children, the new baby daughter of the Saunders along with Mr. Saunders' two children by a former marriage, with some assistance, of course, from the support payments required of Mr. Walker.

Before concluding, we observe that the complexities of the problems presented in child-custody matters would tax the wisdom of Solomon; furthermore, that the divorced parents of children are not in too favorable a position to insist upon legal rights respecting their personal feelings and interests, when their conduct has resulted in children of tender years being found upon the doorsteps of our juvenile and divorce courts. Along these lines, we wish it understood that what we say here respecting the order of the King county juvenile court should in no way be construed as criticism of the court's mode of treatment of a difficult child-custody question, involving, as usual, a variety of perplexing human relationships.

The principal questions involved in the case at bar (making unnecessary any piecemeal consideration of the assign-

ments of error) concern the propriety of the juvenile court's determination respecting (a) the dependency status of the children, and (b) their *temporary custody*. The attack upon the correctness of the juvenile court's disposition of the questions has been considered by us in light of the children's welfare and the degree of conclusiveness of the evidence adduced at the hearing in support of Robert Walker's petition.

The juvenile court's order, attempting to maintain a status of dependency *absolutely* for a period of one year, must be modified. The provision indicating that permanent custody would be awarded to the mother after a period of one year, if conditions should be unchanged, was in excess of the jurisdiction of the juvenile court. Relief is hereby granted to the petitioner in the two respects indicated. In all other respects, the order of the juvenile court is hereby affirmed.

GRADY, C. J., HAMLEY, and DONWORTH, JJ., concur.

SCHWELLENBACH, J., concurs in the result.