# IN RE MARTIN AND MICHAEL BOOTH.
## HENNEPIN COUNTY WELFARE BOARD v. LORRAINE C. BOOTH.

91 N. W. (2d) 921.

August 8, 1958—Nos. 37,388, 37,405.

*Hall, Smith, Hedlund, Juster, Forsberg & Merlin,* for appellant.

*George M. Scott,* County Attorney, and *Theodore R. Rix* and *Douglas X. Juneau,* Assistant County Attorneys, for respondent.

NELSON, JUSTICE.

This case involves two appeals from orders of the District Court of Hennepin County. Generally, it involves the question whether Martin and Michael Booth were dependent children within the meaning of M. S. A. 260.01. Other questions involved are: (1) Whether the evidence sustains the finding that Martin and Michael Booth were neglected children within the meaning of § 260.01; (2) whether there was diligent effort on the part of the Hennepin County Welfare Board prior to the commitment order to avoid the separation of the said children from their mother; (3) whether the juvenile court acquired jurisdiction to hear the final commitment after a temporary custody of said children had expired November 27, 1956, where a summons was not served on the mother at any time after that date; and (4) whether there had been a waiver of the right to notice by the mother by appearances on her part at the hearings held subsequent to November 27, 1956.

The appellant, Lorraine Booth, is the mother of Martin Dean Bohlman Booth born November 16, 1951, and Michael Lee Booth born December 17, 1953. Both children were born out of wedlock, and Martin Bohlman of Truman, Minnesota, was adjudicated father of said children on January 25, 1956.

The appellant was served with a summons and notice pursuant to statutory requirements in a proceeding entitled "In the Matter of Martin Dean and Michael Lee Booth as Dependent and Neglected Children" on May 3, 1956. The first hearing in said proceeding was held on May 8, 1956, before the judge of the District Court, Juvenile Division, Hennepin County. The adjudicated father of the children appeared and testified at the aforesaid hearing, enumerating several instances, occurring between June 1955 and the date of hearing, of appellant associating with married men and claiming that due to the frequency of such occurrences the general environment of her home did not provide

wholesome surroundings nor a wholesome atmosphere for her two children. Martin Bohlman testified that because of this he had intermittently taken the children to his home at Truman, Minnesota, caring for and supervising them.

Appellant admitted before the court that she had gone out with married men and that she had had intimate relations with at least one of them in her apartment. She also stated that she had spent 5 days in Chicago, away from the children, with a married man; that she had carried on extra marital relations with Martin Bohlman, the adjudicated father of the children, for approximately ten years; that she had been previously married and was divorced from her husband in 1945, the custody of the children of that marriage having been awarded to the husband in the divorce proceedings.

It appears from the testimony in these proceedings that at the time of the hearings before the juvenile judge the appellant had been and was supporting herself and her children by working at various restaurants. She was at the time employed on a 2-shift basis, the first, a daytime shift commencing at approximately 11 a. m. and running until 2 p. m.; the second a night shift usually commencing in the evening and ending at approximately 2 a. m. or 3 a. m. the next morning. During the daytime shift the children, over the noon hour, were left with a married woman for care and supervision. During the night shift a 14-year-old girl usually cared for the children in appellant's apartment.

Based upon these facts and the other facts disclosed by the record, the juvenile court concluded that the children were dependent and neglected, as those terms are used and applied under the provisions of § 260.01, and that it would be in the best interests of said children to have the custody transferred to the Commissioner of Public Welfare.[1]

[1]Section 260.01 provides that:

"For the purpose of sections 260.01 to 260.34 the term 'dependent child' means a child who is illegitimate; or whose parents, for good cause, desire to be relieved of his care and custody; or who is without a parent or lawful guardian able to adequately provide for his support, training, and education, and is unable to maintain himself by lawful employment, except such children as are herein defined as 'neglected' or 'delinquent.' The term 'neglected child' means a child who is abandoned by both parents, or if

It further ordered that said children remain until they shall attain their majority unless sooner discharged by due course of law and that pursuant to the requirements of § 260.12 final notice of the court's findings and order be sent to the mother and adjudicated father.

■ The appellant challenges the jurisdiction of the juvenile division of the district court to issue its final order.

Section 260.08 provides for setting the petition filed under c. 260 for hearing; summons; service; guardian ad litem; and custody of child. It provides how jurisdiction may be conferred upon the juvenile court by a service of the notice of the proceedings upon the person having the custody of the children. It is undisputed that a notice of the hearing of May 8, 1956, was duly served upon the mother pursuant to § 260.08 and that the service of this notice conferred jurisdiction on the juvenile court to hear the matter of dependency and neglect of the children and to make a final order of commitment.[2]

Appellant contends that the juvenile court did not have jurisdiction to hear the final commitment after November 27, 1956, the expiration date of the order of the juvenile court made on May 29, 1956, committing the two children to the temporary custody of the executive secretary of the Hennepin County Welfare Board. This order of tempo-

---

one parent is dead, by the survivor, or by his guardian; or who is found living with vicious or disreputable persons, or whose home, by reason of improvidence, neglect, cruelty, or depravity on the part of the parents, guardian, or other person in whose care he may be, is an unfit place for such child; or whose parents or guardian neglect and refuse, when able to do so, to provide medical, surgical, or other remedial care necessary for his health or well-being; * * *."

[2] Section 260.08 reads in part as follows:

"* * * A summons may be issued by the judge or clerk of the court requiring the person having custody or control of the child, or with whom the child may be, to appear with the child at a place and time stated in the summons, which time shall be not less than 24 hours after service. * * * *It shall be sufficient to confer jurisdiction* if service is made at any time before the day fixed in the summons for the return thereof; * * *. The summons shall be served as provided by law for the service of summons in civil actions, and may be served by a probation officer." (Italics supplied.)

rary custody had been duly served upon the appellant and on November 27, 1956, the juvenile court ordered the temporary custody continued to February 26, 1957, without the serving of a formal notice upon the appellant. A hearing was then had before the juvenile court February 26, 1957. Appellant was present in court at the hearing represented by her counsel. The contention that the juvenile court did not have the power to continue the hearing from time to time without giving formal notice to the appellant of the children involved is not well taken. Section 260.11 specifically provides that the juvenile court has power to continue the hearing from time to time, without making an order of final commitment, and that the court may make an order placing the child in temporary care or custody of the County Welfare Board. However, the validity of the order for temporary custody dated May 29, 1956, is not an issue submitted to this court on the present appeal since the appellant is appealing from the final order of commitment dated July 23, 1957, and from an order of the district court dated August 21, 1957, discharging a writ of habeas corpus. It is to be noted that an appeal from the said temporary custody order of the juvenile court was subsequently dismissed by order of the Chief Justice of this court, upon stipulation of the parties thereto. The record does not indicate any instance of an objection being entered to the jurisdiction of the court to hear the matter nor does it appear that the question of proper notice was raised. Clearly the presence of appellant in each and every instance and her counsel constituted a waiver of any defect in the notice if such existed as the record now stands. Appellant has not been prejudiced in that regard.

In re Paulson, 212 Mich. 502, 180 N. W. 386, cited by appellant, is distinguishable from the instant case wherein summons and notice had been served on the appellant as required by statute. In the Paulson case such summons and notice had not been served.[3]

■ We reach the conclusion that the evidence produced at the hearing provides a reasonable basis for the findings and the order of

---

[3]See, Allis v. Day, 14 Minn. 388 (516); State v. Wickliff (Mo. App.) 114 S. W. (2d) 158; 2 Merrill, Notice, § 907; State ex rel. Miller v. Superior Court, 130 Wash. 464, 227 P. 849.

the juvenile court that commitment was necessary as ordered.[4]

In Molto v. Molto, 242 Minn. 112, 114, 64 N. W. (2d) 154, 156, which we think has relevance here, the court dealt with custody as an incident of the divorce proceeding and in the course of deciding that case said:

"* * * Normally custodial preference of small children is for the mother. The paramount and primary consideration, however, is the welfare of the child and to that welfare the rights of the parents must yield. The natural rights of the parents should be carefully safeguarded but not at the expense of their children. In arriving at a solution, the trial court is vested with broad discretionary powers and in the absence of a showing of arbitrary action in awarding custody of a child, this court will not interfere. It should be kept in mind that a trial court, unlike an appellate court, has the opportunity to see the parties as well as their witnesses, hear their testimony, observe their actions, and weigh the evidence in the light of those factors. In the absence of a clear abuse of discretion the action of the trial court must be affirmed."

■ In reviewing the evidence produced at what appears to have been the last hearing on May 31, 1957, it would appear that no significant improvement had been made on the part of the appellant in arranging for satisfactory care and supervision of the children. The evidence produced at a habeas corpus hearing held October 7, 1957, before a referee appointed by this court likewise failed to indicate that the circumstances surrounding the care and supervision of the children had been advanced and corrected to the extent that they ought to be

---

[4]Section 260.33 reads as follows:

"Sections 260.01 to 260.34 shall be liberally construed to the end that their purpose may be carried out. In all proceedings arising under their provisions the court shall act upon the principle that to the child concerned there is due from the state the protection and correction which he needs under the circumstances disclosed in the case; and when it is necessary to provide for him elsewhere than with his parents his care, custody, and discipline shall approximate as nearly as may be that which ought to be given by his parents; and in all cases where it can properly be done he shall be placed in an approved family home and become a member of the family by legal adoption or otherwise."

taken out from under the classification of dependent and neglected children. The record fails to sustain appellant's contention that the trial court's finding of dependency is an arbitrary action amounting to an abuse of discretion and that the adjudication of the children as dependents was not justified by the evidence for the purposes of § 260.01 and other applicable provisions of c. 260. See, Molto v. Molto, *supra;* State ex rel. Jaroszewski v. Prestidge, 249 Minn. 80, 81 N. W. (2d) 705; Aske v. Aske, 233 Minn. 540, 47 N. W. (2d) 417.

We therefore conclude that the orders of the district court appealed from herein must be affirmed.

Affirmed.