**In the Matter of the WELFARE OF the CHILD OF S.S.W., Parent.**

No. A08–2243.

Court of Appeals of Minnesota.

July 7, 2009.

Susan Gaertner, Ramsey County Attorney, Kathryn Eilers, Assistant County Attorney, St. Paul, MN, for appellant Ramsey County Community Human Services Department.

Robert J. Lawton, St. Paul, MN, for respondent S.S.W.

Paul Bergstrom, St. Paul, MN, for guardian ad litem.

Considered and decided by SCHELLHAS, Presiding Judge; ROSS, Judge; and LARKIN, Judge.

## OPINION

LARKIN, Judge.

After a trial on appellant's petition alleging that respondent's child is a child in need of protection or services, the district court held that appellant failed to prove the allegations in the petition and dismissed the petition. Appellant argues that the district court based its decision on an erroneous interpretation of the statutory definition of a "[c]hild in need of protection or services." Because the district court properly applied the law, the evidence supports the district court's findings of fact, and the findings of fact support the district court's conclusions of law, we affirm.

## FACTS

Respondent S.S.W. is the parent of S.W. born December 7, 2007. With the exception of one night in May 2008, S.W. has remained in the care of S.S.W. during this juvenile-protection proceeding. S.S.W. is also the biological parent of four other children. S.S.W.'s parental rights to these children were voluntarily terminated in 2002. In that case, the district court initially held that the children were in need

of protection or services based upon the following findings: S.S.W. engaged in inappropriate sexual conduct with her children; the children had been exposed to long-term neglect including, but not limited to, their dental and physical health, inappropriate exposure to sexual behavior, homelessness, and unsafe caretakers; S.S.W. was in need of a thorough psychological/psychiatric examination, including a psychosexual evaluation; and it was in the children's best interest not to return to S.S.W.'s custody at that time.

Appellant Ramsey County Community Human Services Department (department) filed a child-in-need-of-protection-or-services (CHIPS) petition on February 1, 2008, alleging that S.W. is a child in need of protection or services. The petition alleged the following grounds in support of a finding that S.W. is a child in need of protection or services: (1) S.W. resides with a perpetrator of domestic child abuse or child abuse; (2) S.W. is without necessary food, clothing, shelter, education, or other required care for her physical or mental health or morals because S.S.W. is unable or unwilling to provide care; (3) S.W. is without proper parental care because of the emotional, mental, or physical disability, or state of immaturity of S.S.W.; and (4) S.W.'s behavior, condition, or environment is such as to be injurious or dangerous to S.W. or others. Minn.Stat. § 260C.007, subd. 6(2)-(3), (8)-(9) (2008). The district court issued a pick-up order directing that S.W. be immediately removed from S.S.W.'s physical custody. An emergency-protective-care hearing occurred on February 5, 2008, but S.W. had not been removed from S.S.W.'s care prior to the hearing. The district court ruled that the contents of the petition were insufficient to establish a prima facie showing that "releasing the child to the care of [S.S.W.] would immediately endanger the

child's health, safety or welfare." The district court rescinded the pick-up order and appointed a guardian ad litem (GAL) for S.W. S.S.W. eventually signed a case plan and agreed to participate in the following services: regular psychiatric care, a parenting evaluation, a chemical-dependency assessment, and random urinalysis testing.

The department filed an amended CHIPS petition on May 21, 2008, requesting emergency protective care of S.W. S.S.W. contends that the department removed S.W. from her care on May 21 without court authorization. Our review of the record does not confirm this contention, but the department does not refute it on appeal. The district court held an emergency-protective-care hearing on May 22 and denied the department's request to place S.W. out of home. But the district court ordered S.S.W. to comply with certain requirements as a condition of S.W. remaining in S.S.W.'s physical custody. The requirements were as follows: (1) abstain from mood-altering substances, including alcohol; (2) submit to random urinalysis and breathalyzer tests; (3) complete a chemical-health assessment and follow the recommendations; (4) complete a parenting assessment and follow the recommendations; (5) participate in mental-health services and programs as recommended by the department; (6) take prescribed medications; (7) cooperate with the assigned social worker and the GAL; and (8) keep S.W. in Minnesota unless granted permission to do otherwise.

The district court held a three-day trial on the department's CHIPS petition. The district court received evidence regarding events that preceded S.W.'s birth, including evidence regarding S.S.W.'s history of (1) sexual contact with her five- and six-year-old sons; (2) assaultive behavior including a domestic assault in September 2004, an aggravated assault in January

2007, and an aggravated domestic assault in April 2007; (3) consistent diagnoses of bipolar and personality disorders; (4) failure to follow mental-health-treatment recommendations; and (5) alcohol abuse. The GAL, the assigned caseworker, and a psychologist who assessed S.S.W. during the course of the proceedings testified regarding their contacts with S.S.W. and S.W.

After the conclusion of the trial, the district court issued its findings of fact, conclusions of law and order dismissing the CHIPS petition. The district court acknowledged that S.S.W. is suspicious and resistant and that S.S.W. has a history of mental-health issues that impact her judgment and require treatment. But the district court also found that the assigned caseworker and GAL observed nothing to suggest that S.S.W. was not providing for her child's needs. The district court further found that S.W. was doing well in S.S.W.'s care. The district court therefore concluded that S.W. is not a child in need of protection or services.

Even though the district court's findings of fact do not address the majority of the evidence presented in support of its CHIPS petition, the department did not file a motion for amended findings or for a new trial. Instead, the department filed this appeal.

### ISSUES

I. What is the proper construction of the definition of a "[c]hild in need of protection or services" under Minn. Stat. § 260C.007, subd. 6?

II. Did the district court err in its application of Minn.Stat. § 260C.007, subd. 6?

### ANALYSIS

#### I.

■ The department asserts that the district court's conclusion that it failed to

prove that S.W. is a child in need of protection or services is based on an erroneous interpretation of law. At issue is the proper construction of Minn.Stat. § 260C.007, subd. 6, which defines a "[c]hild in need of protection or services" in juvenile-protection matters. Subdivision 6 states: " 'Child in need of protection or services' means a child who *is in need of protection or services because the child: . . . .*" Minn.Stat. § 260C.007, subd. 6 (emphasis added). The statute then lists 15 grounds that may support a finding that a child is in need of protection or services (child-protection grounds). *Id.* The parties disagree regarding the proper construction of the emphasized language, "is in need of protection or services because the child."

The department argues that a petitioner need only establish the existence of one of the 15 enumerated child-protection grounds to prove that a child is in need of protection or services under the statute. S.S.W. counters that proof of the existence of one of the enumerated child-protection grounds, in and of itself, is insufficient to prove that a child is in need of protection or services. S.S.W. argues that the district court must also find that the child actually needs protection or services as a result of the established child-protection ground. In other words, S.S.W. asserts that a child does not meet the statutory definition of a "[c]hild in need of protection or services" unless one of the enumerated child-protection grounds exists and the child needs protection or services as a result.

S.S.W.'s brief frames her argument in terms of whether a child should be "adjudicated" a child in need of protection or services. The department's brief likewise references the district court's failure to "adjudicate" S.W. as a child in need of protection or services. An adjudication, or the withholding of an adjudication, is a

dispositional decision that occurs *after* a child is proved to be in need of protection or services. Minn. R. Juv. Prot. P. 39.05, subd. 2 ("If the court makes a finding that the statutory grounds set forth in the petition have been proved, the court shall schedule the matter for further proceedings pursuant to Rule 40 [Adjudication]."); Minn. R. Juv. Prot. P. 40.01 (providing that "[i]f the court makes a finding that the statutory grounds set forth in a petition alleging a child to be in need of protection or services are proved, the court shall" either "adjudicate the child as in need of protection or services" or "withhold adjudication"). Here, the district court found that "[t]he facts alleged in the petition have not been prove[d]" and dismissed the CHIPS petition. *See* Minn. R. Juv. Prot. P. 39.05, subd. 1 ("The court shall dismiss the petition if the statutory grounds have not been proved.").

Because the district court ruled that the department failed to prove its petition asserting that S.W. is a child in need of protection or services, it did not consider or decide whether S.W. should be adjudicated as in need of protection or services. Thus, the issue presented on appeal concerns the showing necessary to prove that a child meets the statutory definition of a "[c]hild in need of protection or services," not the standard for determining whether to adjudicate a child as in need of protection or services after the allegations in a CHIPS petition have been proved.

█ If a statute's language is clear and unambiguous, a reviewing court must give effect to its plain meaning and refrain from engaging in further interpretation. *State v. Bluhm,* 676 N.W.2d 649, 651 (Minn.2004). A statute is ambiguous if the language used in the statute is subject to more than one reasonable interpretation. *State v. Wukawitz,* 662 N.W.2d 517, 525 (Minn.2003). The parties argue for differ-

ent interpretations of section 260C.007, subdivision 6. The statutory interpretation suggested by each of the parties is reasonable.

The department advocates a bright-line rule, under which proof of the existence of any of the enumerated child-protection grounds is sufficient to establish that a child is in need of protection or services under the statutory definition, without regard to the particular circumstances of the case or the individual needs of the child. The department's position finds support in the repetitive and circular nature of subdivision 6, which states, " 'Child in need of protection or services' means a child who is in need of protection or services...." This language is reasonably interpreted as nothing more than an in-artful attempt to define the term at issue. This construction also finds support in the nature of the enumerated child-protection grounds— proof of the majority of which seems to necessarily establish that a child needs protection or services. *See, e.g.,* Minn. Stat. § 260C.007, subd. 6(1) ("is abandoned or without parent, guardian, or custodian"), subd. 6(3) ("is without necessary food, clothing, shelter, education, or other required care for the child's physical or mental health or morals because the child's parent, guardian, or custodian is unable or unwilling to provide that care").

But there is also merit to S.S.W.'s argument that, given the broad discretion entrusted to the district court when deciding juvenile-protection matters, subdivision 6 should be interpreted in a manner that allows the district court to render a decision that takes into account the particular circumstances of each case and the individual needs of children. *See In re Booth; Hennepin County Welfare Board v. Booth,* 253 Minn. 395, 400, 91 N.W.2d 921, 924

(Minn.1958) ("The natural rights of the parents should be carefully safeguarded but not at the expense of their children. In arriving at a solution, *the trial court is vested with broad discretionary powers....*" (Emphasis added)). S.S.W. argues for a construction that enables the district court to exercise discretion when deciding whether a child meets the statutory definition of a "[c]hild in need of protection or services."

For the reasons that follow, we conclude that section 260C.007, subdivision 6, requires proof that one of the enumerated child-protection grounds exists and that the subject child needs protection or services as a result.

"Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2008); *see* Minn.Stat. § 645.17(2) (2008) (providing that "the legislature intends the entire statute to be effective"). If subdivision 6 is construed as the department suggests, the phrase "is in need of protection or services because the child" is rendered superfluous. If we instead construe the phrase to require a determination that there is a need for protection or services, in addition to a determination that one of the enumerated child-protection grounds exists, we give effect to all of the language within subdivision 6.

If the legislature had intended the construction suggested by the department, it could have simply omitted the phrase "is in need of protection or services because the child." If these words had been omitted, the statute would read, " 'Child in need of protection or services' means a child who: ...," followed by the enumerated child-protection grounds. If the legislature had used this language, then proof of the existence of an enumerated child-protection ground, in and of itself, would clearly be

sufficient to meet the statutory definition.[1] But the inclusion of the additional language "is in need of protection or services because the child" suggests that more is required.

Other canons of statutory construction indicate that the phrase "is in need of protection or services because the child" is properly construed as an independent component of the "[c]hild in need of protection or services" definition. When interpreting statutes, we presume that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn.Stat. § 645.17(1). We can readily identify several scenarios in which the department's suggested construction would yield absurd and unreasonable results.

For example, under subdivision 6(2)(i), a child may be found to be a "[c]hild in need of protection or services" if the child "has been a victim of physical or sexual abuse." Minn.Stat. § 260C.007, subd. 6(2)(i). The statutory provision is silent regarding the perpetrator of the abuse, the date of the abuse, and the location of the abuse. Thus, a child who was physically abused by a child-care provider in a licensed child-care facility technically falls within the plain language of subdivision 6(2)(i). Under the department's construction of sub-division 6, the child would meet the statutory definition of a "[c]hild in need of protection or services" even if the child's parents removed the child from the child-care facility and provided the child with all care necessary to address the abuse. In this scenario, the child's parents in no way caused or knowingly contributed to the child's physical abuse. Nor did the par-

ents fail to provide for the child's needs following the abuse. Even though one of the enumerated child-protection grounds is established, it would be unreasonable and absurd to conclude that this child is in need of protection or services given the particular facts of the case and the child's individual needs.

Likewise, subdivision 6(2)(ii) provides a basis for a child-protection finding when a child "resides with or has resided with a victim of . . . domestic child abuse." Minn. Stat. § 260C.007, subd. 6(2)(ii); *see* Minn. Stat. § 260C.007, subd. 13 (2008) (defining "[d]omestic child abuse" to include "any physical injury to a minor family or house-hold member inflicted by an adult family or household member other than by accidental means"). This provision is also silent regarding the perpetrator of the abuse, the relationship between the subject child and the perpetrator, the date of the abuse, and the location of the abuse. Under the bright-line rule advanced by the department, a child would meet the definition of a "[c]hild in need of protection or services" under subdivision 6(2)(ii) if the child resides with a half-sibling who had been physically injured years earlier in another state by an adult family member who is unrelated to the child and who has no contact with the child. Absent evidence that the child actually needs protection or services as a result of the child's residence with the half-sibling, it would be absurd and unreasonable to conclude that this child is in need of protection or services.

The department contends that failure to adopt a bright-line rule will also yield an absurd and unreasonable result. The de-

---

1. This is, in fact, the very approach that the legislature utilized when prescribing the statutory grounds for termination of parental rights. The relevant statute provides that the district court, upon petition, may terminate all rights of a parent to a child, "if it finds that one or more of the following conditions exist[s]." Minn.Stat. § 260C.301, subd. 1(b) (2008). Of course, the best interests of the child must be the paramount consideration. *Id.*, subd. 7.

partment notes that section 260C.301, subdivision 3, mandated the filing of a termination-of-parental-rights (TPR) petition concerning S.W. based on S.S.W.'s infliction of egregious harm on S.W.'s siblings. *See* Minn.Stat. § 260C.301, subd. 3 (2008) (requiring that the county attorney file a TPR petition concerning a child "determined to be the sibling of another child of the parent who was subjected to egregious harm"); *see also* Minn.Stat. § 260C.007, subd. 14(10) (2008) (establishing that "egregious harm" includes sexual abuse of a child). But section 260C.301, subdivision 3, also provides that the requirement for a TPR petition does not apply if the county attorney instead files a CHIPS petition documenting a compelling reason why filing a TPR petition is not in the child's best interests. Minn.Stat. § 260C.301, subd. 3(b)(2).

■ The department's contention is as follows: it is absurd to conclude that a set of facts that requires the filing of a mandatory TPR petition could nonetheless be insufficient to sustain a CHIPS finding. We reject this argument because whether a TPR petition or a CHIPS petition is filed, the petitioner must still meet its burden of proof. A CHIPS petitioner is not entitled to a finding that its petition is proved merely because the alleged facts would have justified a mandatory TPR petition. The CHIPS petitioner must prove that the child meets the statutory definition of a "[c]hild in need of protection or services" by clear and convincing evidence. Minn. R. Juv. Prot. P. 39.04, subd. 1 ("To be proved at trial, the statutory grounds set forth in the petition must be proved by clear and convincing evidence."). Moreover, if the legislature intended to require the district court to presume that a child is in need of protection or services when a county attorney files a CHIPS petition instead of a mandatory TPR petition under

section 260C.301, subdivision 3, the legislature could have easily provided for this result. *See* Minn.Stat. § 260C.301, subd. 1(b)(4) (allowing TPR based on palpable unfitness and establishing a presumption of palpable unfitness under certain circumstances), 1(b)(5) (allowing TPR when reasonable efforts have failed to correct the conditions that led to a child's out-of-home placement and establishing a presumption that reasonable efforts have failed under certain circumstances).

In considering these examples, we are mindful of the competing rights at stake in juvenile-protection matters. *See Booth*, 253 Minn. at 400, 91 N.W.2d at 924 (stating that "[t]he paramount and primary consideration ... is the welfare of the child and to that welfare the rights of the parents must yield" (quotation omitted)). And we in no way question the state's legitimate interest in protecting children from abuse and neglect. But we also recognize that a finding that a child is in need of protection or services may impact a parent's custodial rights. A juvenile-protection proceeding involves multiple decisions related to the temporary and permanent custody of children. Minn.Stat. § 260C.201, subds. 1(2) (providing that if the district court finds that a child is in need of protection or services the district court may transfer legal custody of the child to a child-placing agency or the responsible social services agency), 11(c)(2) (authorizing the district court to permanently transfer legal custody of a child found to be in need of protection or services to a relative) (2008). Construing subdivision 6 in a manner that allows the district court to consider the particular circumstances of each case and the unique needs of the subject child, as opposed to applying a bright-line rule, ensures that children will not be removed from their parents' custody unless a change in custody is necessary. *See* Minn.Stat.

§ 260C.001, subd. 2(b)(3) (2008) (stating that one of the purposes of the child-protection laws is "to preserve and strengthen the child's family ties whenever possible and in the child's best interests, removing the child from the custody of parents only when the child's welfare or safety cannot be adequately safeguarded without removal").

We next consider the best interest of the child, one of the paramount considerations in all proceedings concerning a child alleged to be in need of protection or services. Minn.Stat. § 260C.001, subd. 2(a) (2008); *see, e.g., In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn.1986) (finding no basis to distinguish among the various child-placement procedures, whether temporary or permanent, and concluding that the best interest of the child is the paramount consideration). When determining a child's best interest, the district court traditionally considers the child's unique circumstances and individual needs. *See* Minn.Stat. §§ 260C.193, subd. 3(a) (stating that the policy of the state is to ensure that the best interests of children in foster care are met by requiring individualized determinations of the need of the child), 260C.212, subd. 2 (listing eight factors that the responsible child-placing agency must consider when determining the needs of a child who is placed in foster care, including current functioning and behavior; medical, educational, and developmental needs; religious and cultural needs; and the child's interests and talents) (2008); *see also* Minn.Stat. § 518.17, subd. 1 (2008) (setting forth best-interest factors related to the child's circumstances).

The bright-line rule suggested by the department, under which a child is deemed to be in need of protection or services based solely on the existence of one of the enumerated child-protection grounds, is incompatible with traditional best-interest analysis. Conversely, construing subdivision 6 to require a showing that the subject child actually needs protection or services as a result of the established child-protection ground allows the district court to consider the particular circumstances of the case and the individual needs of the child, as is customary in traditional best-interests analysis. This construction also provides the district court with a means of exercising the broad discretionary powers with which it is entrusted, *Booth*, 253 Minn. at 400, 91 N.W.2d at 924, unlike the proposed bright-line rule, which would significantly restrict the district court's discretion.

Finally, at oral argument, the department conceded that a child's best interest is an overriding consideration that may refute the existence of an enumerated child-protection ground. The department agreed that a district court would be within its discretion to find that a child is not in need of protection or services based on a best-interest determination, despite the existence of an enumerated child-protection ground. The department also agreed that we should not construe subdivision 6 in a manner that renders any of its provisions superfluous. The department's concessions undercut the bright-line rule that it advances.

The department's citation to *In re Welfare of J.W.*, 391 N.W.2d 791 (Minn.1986), also undercuts its argument. The department cites *J.W.* for the proposition that a child can be adjudicated in need of protection or services without evidence that the child has suffered direct abuse or neglect. In *J.W.*, children were alleged to be in need of protection or services [2] based upon

---

**2.** The supreme court in *J.W.* applied a previous version of the juvenile-protection statute

that used the language "dependent and neglected" rather than the current language,

their parents' suspected infliction of a critical injury to their two-year-old nephew, who was in their care. *Id.* at 792. The nephew subsequently died. *Id.* After a CHIPS trial, the district court found that the parents' children were in need of protection or services, and the Minnesota Supreme Court held that the district court's findings were not erroneous. *Id.* at 796. The district court based its ruling on "the parents' history of violence, the unexplained homicide of [a child] for which one or both of [the parents] was deemed responsible, and [the parents'] cover-up of the circumstances surrounding [their nephew's] injury." *Id.* at 793. *"Based on these findings,* the court concluded that respondents demonstrated a lack of ability to care for their own children, [and] that [the children] were, therefore, dependent and neglected, and ordered the children kept in foster care." *Id.* (emphasis added). Thus, the district court found not only the existence of the alleged child-protection grounds, but also concluded that the children needed protection or services as a result. The district court's reasoning in *J.W.* is consistent with our interpretation of the statutory definition of a "[c]hild in need of protection or services."

Because construction of section 260C.007, subdivision 6, as a bright-line rule (1) fails to give effect to all of its provisions, (2) may yield unreasonable and absurd results, (3) is inconsistent with traditional best-interest analysis, and (4) prevents the district court from exercising its discretion in juvenile-protection matters, we decline to construe subdivision 6 in the manner suggested by the department. Instead, we hold that a child does not meet the statutory definition of a "[c]hild in need of protection or services" under section 260C.007, subdivision 6, unless one of the enumerated child-protection grounds exists and the child needs protection or services as a result.

## II.

■ Having determined the proper construction of the statutory definition of a "[c]hild in need of protection or services," we next review the district court's application of the definition in S.W.'s case. The department contends that the district court's conclusion that S.W. is not a child in need of protection or services is based on the district court's erroneous belief that the statutory definition requires proof that S.W. suffered direct abuse or neglect.

■ We agree that section 260C.007, subdivision 6, does not mandate proof of current abuse or neglect unless the alleged child-protection ground requires such proof. But the district court did not require the department to prove current abuse or neglect. While the district court used the phrases "direct evidence that the child in question is being abused or neglected," and "evidence of abuse or neglect of the child in question," the district court correctly concluded, "The dispositive issue here is whether the child in question is being abused or neglected or *appears to be presently at risk.*" (Emphasis added.)

The district court addressed the department's reading of section 260C.007, subdivision 6, and stated that it is too narrow, reasoning that if the district court followed the department's interpretation, "it would create a legal environment where any child that resides with a person who has ever been found to have committed child abuse at any point must be adjudicated CHIPS . . . ." The district court "decline[d]

"[c]hild in need of protection or services." *See generally* 391 N.W.2d at 791 (applying

Minn.Stat. § 260.015, subds. 6, 10 (1984)).

to create such a legal environment." The district court's statements indicate that it understood that the department was advocating a bright-line rule, and the district court rejected that approach. The district court's identification of the dispositive issue as "whether the child in question is being abused or neglected or appears to be presently at risk" is consistent with an inquiry regarding whether S.W. needs protection or services as a result of S.W.'s residence with a perpetrator of child abuse, or as a result of S.S.W.'s mental health, chemical dependency and behavioral issues. And that inquiry is consistent with the interpretation of subdivision 6 adopted herein. Thus, the district court did not base its decision on an erroneous interpretation or application of section 260C.007, subdivision 6.

■■■ The district court is vested with "broad discretionary powers" when deciding juvenile-protection matters. *Booth,* 253 Minn. at 400, 91 N.W.2d at 924. Typically, findings in a juvenile-protection proceeding will not be reversed unless clearly erroneous or unsupported by substantial evidence. *In re Welfare of D.N.,* 523 N.W.2d 11, 13 (Minn.App.1994), *review denied* (Minn. Nov. 29, 1994). A close review inquires into the sufficiency of the evidence to determine whether the evidence is clear and convincing. *In re Welfare of J.M.,* 574 N.W.2d 717, 724 (Minn.1998). "Considerable deference is due to the district court's decision because a district court is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.,* 554 N.W.2d 393, 396 (Minn.1996).

■■■ But when no motion for a new trial has been made—as is the case here—the questions for review include "whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *In re Welfare of M.J.L.,* 582 N.W.2d 585, 588 (Minn.App.1998); *see* Minn. R. Juv. Prot. P. 45.03 (providing that, "[u]pon motion, the [district] court may amend its findings or make additional findings, and may amend the order accordingly"); Minn. R. Juv. Prot. P. 45.04 (providing that a new trial may be granted on several grounds); Minn. R. Juv. Prot. P. 45.06 (providing that in response to any post-trial motion, the district court may "conduct a new trial"; "reopen the proceedings and take additional testimony"; "amend the findings of fact and conclusions of law"; or "make new findings and conclusions"). Our scope of review also includes substantive legal questions not raised in post-trial motions, but properly raised during trial. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.,* 664 N.W.2d 303, 310–11 (Minn.2003).

The department does not claim that the district court's findings of fact are not supported by the evidence. Instead, the department argues at length that the evidence presented at trial warrants the conclusion that S.W. is a child in need of protection or services. The department cites to record evidence that indicates that (1) S.S.W. is a perpetrator of child abuse; (2) S.S.W.'s mental health issues, chemical dependency, history of sexual abuse, and "other areas of risk" impair her ability to provide proper parental care; (3) S.W.'s condition and environment are dangerous; and (4) S.W. is without other required care for her physical or mental health or morals. But we will not retry the case on appeal.

■■■ "An appellate court exceeds its proper scope of review when it bases its conclusions on its own interpretation of the evidence and, in effect tries the issues anew and substitutes its own findings for those of the trial judge." *Stiff v. Associated Sewing Supply Co.,* 436 N.W.2d 777, 779 (Minn.1989). Our limited scope of re-

view does not allow us to engage in additional fact-finding or to remand for different factual findings supporting different conclusions. Although the record contains evidence which, if believed, would support findings of fact more favorable to the department, because the record contains evidence to support the district court's findings of fact, and because those findings support the district court's conclusion, "we may not reverse just because we might have found the facts differently in the first instance." *Id.* at 779–80.

Moreover, when reviewing a determination whether a child is in need of protection or services, the supreme court has instructed:

> It should be kept in mind that a trial court, unlike an [appellate] court, has the opportunity to see the parties as well as their witnesses, hear their testimony, observe their actions, and weigh the evidence in light of those factors. In the absence of a clear abuse of discretion the action of the trial court must be affirmed.

*Booth*, 253 Minn. at 400, 91 N.W.2d at 924 (quotation omitted).[3] We are thus bound by a very deferential standard of review.

The department argues that even if a separate showing regarding S.W.'s need for protection or services is required under Minn.Stat. § 260C.007, subd. 6, the district court's findings of fact support a conclusion that S.W. needs protection or services and that the district court erred by concluding otherwise. In support of this argument, the department points to the following language within the district court's conclusions of law:

The Court shares with [the department] deep concerns about [S.S.W.'s] CHIPS history, her mental health, and the health, safety and welfare of the child.... There is no question that [S.S.W.] and her child would benefit from services. The Court strongly urges [S.S.W.] to access any services that might be available through the agency, because such services would greatly benefit her child.

Despite its recognition that services would be beneficial, the district court concluded that it was compelled to hold petitioner to its burden of proof stating, "The fear that [S.S.W.'s] history of child abuse might be repeated is not sufficient to meet [the department's] legal burden." The district court based its conclusion on "direct evidence concerning [S.S.W.'s] care of the child, her maintenance of her home and her interactions with the child."

The district court's findings are supported by the evidence. The assigned caseworker of seven months observed nothing to suggest that S.S.W. was not providing for S.W.'s needs during the worker's 20 visits to S.S.W.'s home. During these visits, S.S.W.'s home "was always neat," and S.S.W. "behaved appropriately with the child, who appeared to be doing well." The district court also found that the assigned GAL visited S.S.W.'s home approximately 12 times, one time unannounced, and that the home was always neat and clean. The GAL also met with S.S.W. and her caseworker on three occasions. S.S.W. always cooperated with the GAL. The district court noted that the GAL believed it was likely that S.S.W.'s parenting ability may have improved since

---

**3.** *Booth* described the district court's ability to determine whether children are dependant or neglected as within the district court's "broad discretionary powers." *Booth*, 253 Minn. at 400, 91 N.W.2d at 924. *Booth* was interpreting the district court's discretion in the context of Minn.Stat. § 260.01 (1956), which provided a definition comparable to that within Minn.Stat. § 260C.007, subd. 6. *Id.*

the time of her previous child-protection case and that the GAL did not conclude that S.S.W. was unfit to care for her child. The district court also noted the GAL testified that "he had seen nothing in [S.S.W.'s] home or in her interactions with the child to suggest that the child was in need of protection or services." The district court's ultimate conclusion that S.W. is not a "[c]hild in need of protection or services" indicates that the district court implicitly found the GAL's testimony credible and persuasive.

These findings support the district court's conclusion that notwithstanding S.S.W.'s past and current behavioral concerns, the department failed to prove that S.W. is a "[c]hild in need of protection or services." We do not equate the district court's stated concern regarding S.S.W. and S.W. and the district court's opinion that S.W. "would benefit from services" with a conclusion that S.W. currently *needs* protection or services. The district court recognized that failure to adjudicate S.W. as a child in need of protection or services would end the services that had been put in place during the proceedings. But regardless of the benefits of those services to S.S.W. and S.W., the district court concluded that it was compelled to hold the department to its burden of proof. This statement is reasonably interpreted as a determination that services were beneficial, but not necessary. We recognize that this is a close case and that the district court's findings could support a conclusion that S.W. is a child in need of protection or services. But, given our standard of review, we hold that the district court properly exercised its discretion by concluding that S.W. is not a "[c]hild in need of protection or services."

## DECISION

Section 260C.007, subdivision 6, which defines a "[c]hild in need of protection or services," requires proof of the existence of one of the enumerated child-protection grounds and that the child needs protection or services as a result. Given the deference that must be afforded to the district court as the finder of fact in a juvenile-protection matter, we hold that the evidence supports the district court's findings, which in turn support the district court's conclusion that S.W. is not a "[c]hild in need of protection or services." Accordingly, we affirm.

**Affirmed.**