*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0064**

In the Matter of the Welfare of the Child of:
S. A. W. and C. K., Parents

**Filed July 7, 2014
Affirmed
Worke, Judge**

Douglas County District Court
File No. 21-JV-13-1656

Christopher D. Karpan, Alexandria, Minnesota (for appellant S.A.W.)

Douglas R. Hegg, Alexandria, Minnesota (for respondent C.K.)

Chad Larson, Douglas County Attorney, Daniel C. Lee, Assistant County Attorney, Alexandria, Minnesota (for respondent Douglas County Social Services)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant-mother challenges the district court's adjudication of her child as a child in need of protection or services (CHIPS), arguing that the record lacks clear and convincing evidence to support the district court's findings and adjudication. We affirm.

**FACTS**

In 2012, appellant S.A.W. was living in Pope County with her boyfriend C.K. S.A.W. and C.K. are the parents of A.S.K., DOB November 9, 2012.[1]  In 2012, S.A.W. received mental-health services from Charlene Lundebrek, a mental-health case manager. In August 2013, when the family moved to Douglas County, S.A.W. reported to Lundebrek that she was going to discontinue services because she was doing well.

On October 7, 2013, S.A.W. contacted Lundebrek to report that she was not doing well.  Lundebrek visited S.A.W. on October 9.  S.A.W. appeared anxious and upset and told Lundebrek that she felt that way because she sensed a feeling of isolation after moving.  S.A.W. was not sleeping or eating and was frustrated with A.S.K.  S.A.W. reported that she was concerned that she might harm A.S.K.  Specifically, S.A.W. was having thoughts of dropping A.S.K. from the balcony and wondering what she would look like lying on the ground, and of putting A.S.K. in small spaces, like the refrigerator and washing machine.  S.A.W. reported that she put A.S.K. in the washing machine to show her that it was not a place for her to go into, and that C.K. put A.S.K. in the oven as a joke.

Coreen Schoep, a social worker and mental-health therapist, was contacted to conduct an emergency assessment.  Schoep interviewed S.A.W. on October 11, 2013. S.A.W. reported that she was having "racing thoughts," had trouble breathing, was too anxious to eat, had trouble sleeping, and was often agitated, stressed, and overwhelmed.

---

[1] S.A.W. is the sole legal and sole physical custodian of A.S.K.  C.K. did not participate in this appeal.

2

S.A.W. reported that she had been having intrusive thoughts of what A.S.K. would look like if she "would throw her over a balcony" or put her in the washing machine.

On October 18, 2013, respondent Douglas County Social Services (DCSS) filed a CHIPS petition alleging that A.S.K. was without proper parental care because of the emotional, mental, or physical disability, or state of immaturity of S.A.W., and was in a dangerous environment.

The district court held a hearing in December 2013. S.A.W. gave the following testimony. She has accessed mental-health services for much of her life. Her new apartment has a balcony, which she never experienced before, and she would envision what A.S.K. would look like if she fell. These thoughts bothered her. She began worrying when A.S.K. started crawling that she would fit into small spaces. A.S.K. crawled into a dryer and S.A.W. put her all the way in to show her that it was a place she should not go. S.A.W. was joking when she and C.K. held A.S.K. close to the oven and told her that she was so adorable they could eat her up, and when she opened the refrigerator and told A.S.K. that she was "storing a delicious baby for later."

On December 24, 2013, the district court issued an order finding that DCSS proved with clear and convincing evidence that S.A.W. has a mental-health condition that requires treatment in order for her to properly cope with the realities of raising A.S.K. The district court also found that DCSS proved with clear and convincing evidence that S.A.W. exhibits a state of emotional immaturity through the "jokes" of placing A.S.K. near or in an oven and a refrigerator. The court concluded that DCSS proved with clear and convincing evidence the statutory grounds contained in Minn. Stat. § 260C.007,

3

subd. 6(8) (2012), but dismissed the allegation that A.S.K. is a CHIPS because she is in a dangerous environment. This appeal followed.

**D E C I S I O N**

Minn. Stat. § 260C.007, subd. 6 (2012), requires proof that one of the enumerated child-protection grounds exists and that the child needs protection or services as a result. *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 728 (Minn. App. 2009). "We are . . . bound by a very deferential standard of review [of factual findings on appeal from a district court's CHIPS determination]." *Id.* at 734. Findings in a CHIPS proceeding will not be reversed unless clearly erroneous or unsupported by substantial evidence. *In re Welfare of B.A.B.*, 572 N.W.2d 776, 778 (Minn. App. 1998). "[A] district court's individual fact-findings will not be set aside unless the review of the entire record leaves the court with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). We defer to the district court's determination of witness credibility. *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996).

The district court concluded that DCSS proved with clear and convincing evidence the statutory grounds contained in Minn. Stat. § 260C.007, subd. 6(8). Under this statute, a child is in need of protection or services if the child "is without proper parental care because of the emotional, mental, or physical disability, or state of immaturity of the child's parent." Minn. Stat. § 260C.007, subd. 6(8). S.A.W. argues that the district court's findings are not supported by clear and convincing evidence.

S.A.W. relies on caselaw that states that "mental illness, in and of itself, does not permit termination of parental rights." *See In re Welfare of Children of T.R.*, 750 N.W.2d

4

656, 661 (Minn. 2008) (quotation omitted). S.A.W.'s reliance is misplaced because *T.R.* was a termination-of-parental-rights case and addressed a mental-illness concern in considering whether a parent was palpably unfit to be a party to the parent-child relationship under Minn. Stat. § 260C.301, subd. 1(b)(4). *Id.* Additionally, here, the district court did not base its determination on S.A.W.'s mental-health condition alone. The district court found that "[t]he totality of the . . . circumstances" showed that A.S.K. was without proper parental care because (1) S.A.W.'s mental-health condition was untreated, (2) S.A.W. demonstrated her emotional immaturity through "jokes" of placing A.S.K. in inappropriate places, and (3) S.A.W. chose to forgo therapeutic medication because of fear for A.S.K.'s safety, but self-medicated with controlled substances, again demonstrating emotional immaturity. The district court did not rely solely on S.A.W.'s mental health, but on the fact that S.A.W. only sporadically sought mental-health treatment that was needed in order for her to properly cope with the realities of raising her daughter in concluding that A.S.K. was without proper parental care.

S.A.W. argues that "it is not [her] parenting or raising of the child that is the problem, it is her disclosure." But her disclosure relates to her parenting. And although she claims that she was misunderstood, the district court considered this claim. A mental-health therapist who assessed S.A.W. after A.S.K. was removed from the home testified that S.A.W. reported feeling worried about holding A.S.K. on the balcony because she fussed and threw herself backward and S.A.W. was concerned that she would fall. The district court stated that there is a distinction between thoughts of "throwing" A.S.K. over the balcony and A.S.K. squirming out of S.A.W.'s arms and

5

falling, and concluded that S.A.W. "had significant incentive to reframe her disclosures" when she later claimed that she worried that A.S.K. would fall out of her arms. The district court determined that S.A.W.'s initial report was truthful. *See L.A.F.*, 554 N.W.2d at 396 (stating that we defer to a district court's credibility determinations). But the district court also found that S.A.W.'s claims that she was "joking" when she placed A.S.K. near or in an oven and a refrigerator were an indication of emotional immaturity.

The record supports the district court's findings, which support the district court's determination that A.S.K. is in need of protection or services because she is without proper parental care because of the emotional, mental, or physical disability, or state of immaturity of S.A.W.

**Affirmed.**