*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1784**

In the Matter of the Welfare of the Child of:
C. K. P. and A. W.,
Parents.

**Filed March 21, 2016
Affirmed
Peterson, Judge**

Lyon County District Court
File No. 42-JV-15-136

C.K.P., Minneota, Minnesota (pro se appellant)

Robert L. Gjorvad, Runchey, Louwagie & Wellman, PLLP, Marshall, Minnesota (for respondent S.P.-W.)

Richard R. Maes, Lyon County Attorney, Nicole A. Springstead, Assistant County Attorney, Marshall, Minnesota (for respondent Lyon County)

A.W., Sauk Rapids, Minnesota (pro se respondent)

Betty Schoephoerster, Marshall, Minnesota (guardian ad litem)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**PETERSON**, Judge

Pro se mother challenges a district court order that grants the responsible social services agency custody of her child for placement in an aftercare program to complete chemical-dependency treatment. We affirm.

**FACTS**

Because fifteen-year-old S.P.-W. did not attend school from December 4, 2014, to February 14, 2015, he was adjudicated a child in need of protection or services (CHIPS). A case plan approved by the district court required S.P.-W. to attend school daily, engage in individual and family therapy, complete a chemical-use assessment, and complete random testing for alcohol and controlled substances. Appellant-mother C.K.P. (mother) was required to monitor S.P.-W.'s progress, engage in family therapy, complete a diagnostic assessment, and complete random testing for alcohol and controlled substances. Both mother and S.P.-W. were required to follow recommendations made by professionals who provided services to them.

S.P.-W. did not attend school regularly for the remainder of the 2015 school term, and mother did not comply with the case plan, and the court-appointed guardian ad litem and the social worker requested out-of-home placement for S.P.-W. In a June 2015 order, the district court continued the existing custodial arrangement but directed S.P.-W. and mother to comply with the case plan. S.P.-W. completed a chemical-use assessment and started inpatient treatment at the WINGS treatment program on July 28, 2015.

On October 1, 2015, Lyon County[1] moved to transfer custody of S.P.-W. to Southwest Health and Human Services (SWHHS) to facilitate his chemical-dependency aftercare treatment. A social worker's affidavit supporting the motion states that: (1) WINGS recommended that S.P.-W. attend aftercare treatment at Phoenix Group Home; (2) S.P.-W.'s intake was scheduled for October 6, 2015; (3) mother stated that she would not allow S.P.-W. to go to aftercare at Phoenix Group Home and threatened to remove S.P.-W. from WINGS; (4) the social worker received a telephone call from mother advising her that S.P.-W. would be attending East Central Behavioral Health in Brookings, South Dakota; (5) the social worker was not aware of the level of care provided at East Central Behavioral Health and it appeared to be out-patient care rather than extended aftercare; (6) "it is in the child's best interests to be placed in the care and custody of [SWHHS] at this time to ensure he is receiving appropriate treatment and aftercare for his chemical dependency;" and (7) "placement in a [g]roup [h]ome for extended aftercare is in the child's best interests and the least restrictive alternative at this time." An August 31, 2015 treatment report from WINGS supported the social worker's affidavit and provided details about S.P.-W.'s condition.

Following an emergency hearing on October 5, 2015, the district court ordered S.P.-W.'s custody transferred to SWHHS "for appropriate placement in accordance with the Chemical Use Assessment and discharge plan previously filed with the Court." The order includes findings consistent with the social worker's affidavit. The court found that

---

[1] Venue was transferred from Lincoln County to Lyon County after mother moved to Lyon County.

"the in-patient treatment program in Minnesota has been verified and recommended, and the child is eligible to be enrolled to enter the program at this time" and that the court did "not have information as to the out-patient treatment program in Brookings, South Dakota, as to whether or not the child is eligible to participate in the program, when the child might be able to begin, or other significant details associated with the program itself." The district court found that it was in S.P.-W.'s best interests to be placed in the "readily available" aftercare program recommended as part of his discharge from the WINGS program.

Mother appeals.

## DECISION

*Custody Determination.* The district court may transfer legal custody of a child designated as in need of protection or services to "the responsible social services agency." Minn. Stat § 260C.201, subd. 1(a)(2)(ii) (2014); *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 730 (Minn. App. 2009). Consistent with the CHIPS case-plan directive, S.P.-W. completed a chemical-use assessment. It was discovered that S.P.-W. was chemically dependent, and he was required to attend treatment. Mother challenges the factual basis for the district court's decision to remove S.P.-W. from her custody during his chemical-dependency aftercare treatment.

This court is "bound by a very deferential standard of review" of factual findings in a CHIPS matter. *S.S.W.*, 767 N.W.2d at 734. "Findings in a CHIPS proceedings will not be reversed unless clearly erroneous or unsupported by substantial evidence." *In re Welfare of B.A.B.*, 572 N.W.2d 776, 778 (Minn. App. 1998). "A finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably

4

supported by the evidence as a whole." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 660-61 (Minn. 2008) (quotation omitted). When reviewing factual findings, this court views the record in the "light most favorable to the findings." *Frauenshuh v. Giese*, 599 N.W.2d 153, 156 (Minn. 1999).

The evidence reasonably supports the district court's findings. The county presented evidence that S.P.-W. had completed or nearly completed the WINGS program, mother intended to remove S.P.-W. from the WINGS facility about the time that he was to be transferred to the aftercare program recommended by WINGS, and mother preferred that S.P.-W. receive out-patient aftercare treatment in South Dakota, which could occur while he resided with her.

Mother testified at the hearing that she was not opposed to an aftercare program and "want[s] what's best for [her] son." Noting that S.P.-W. had already missed two months of the current school year, mother contended that the South Dakota program would permit S.P.-W. to attend school and that the aftercare program recommended by WINGS would result in S.P.-W. missing more school. But mother provided only vague information about the South Dakota program and about how she could transport S.P.-W. to the program, which required a forty- to forty-five minute drive from her residence. Mother told the district court that she would be getting her driver's license on the day of the hearing.

Mother makes various arguments why the district court's decision is erroneous. She argues that she never agreed to give up custody of S.P.-W. But her consent was not necessary in a CHIPS proceeding. Minn. Stat § 260C.201, subd. 1(a)(2). She argues that her version of the facts supports her retention of custody and that the district court did not

properly evaluate the credibility of the witnesses. But it is the district court's role as factfinder to judge the credibility of witnesses. *See In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996) (stating that "[c]onsiderable deference is due to the district court's decision because a district court is in a superior position to assess the credibility of witnesses"). Finally, she argues that the district court erred by determining that the change in S.P.-W.'s custody was in his best interests. The evidence supports the district court's finding that it is in S.P.-W.'s best interests to be placed in a readily available aftercare program that was recommended by the chemical-dependency program that S.P-W. had completed or was about to complete.

*Due-Process Claim.* Mother argues that she has "every right to make decisions for [her] children," and she appears to argue that the district court violated her due-process rights by removing S.P.-W. from her home. *See Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060 (2000) (stating that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"). A parent is presumed to be a fit and suitable person to care for her child. *In re Welfare of C.K.*, 426 N.W.2d 842, 847 (Minn. 1988). Minnesota recognizes "the substantial and fundamental rights of parents to enjoy the custody and companionship of their children." *In re the Child of P.T.*, 657 N.W.2d 577, 583 (Minn. App. 2003), *review denied* (Minn. Apr. 15, 2003). "But parental rights are not absolute and should not be unduly exalted and enforced to the detriment of the child's welfare and happiness. The right of parentage is in the nature of a trust and is subject to parents' correlative duty to protect and care for the child." *Id.* (quotation omitted).

6

Mother's bare allegation that she has the right to make decisions for her children is insufficient to obtain relief.

Mother also raises an issue that was not raised in the district court. This court will not address issues that were not raised in and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (ruling that an appellate court will not consider matters not raised in or considered by the district court). We note that although mother challenges the district court's decision to transfer S.P.-W.'s custody to SWHHS, the district court had statutory authority to take this action in a CHIPS matter. *See* Minn. Stat. § 260C.201, subd. 1(a)(2)(ii).

*Hearing Transcript Accuracy.* Mother asserts that her recollection of statements made at the October 5, 2015 hearing differs from the hearing transcript. She contends that "very important statements made" by the guardian ad litem and other witnesses were omitted from the transcript, and that when she brought this error to the attention of the court reporter, the court reporter responded that "she thought they were off the record." Mother's concerns about the accuracy of the transcript needed to be raised in the district court. *See Noltimier v. Noltimier*, 280 Minn. 28, 29, 157 N.W.2d 530, 531 (1968) ("Error cannot be presumed."); *Truesdale v. Friedman*, 267 Minn. 402, 404, 127 N.W.2d 277, 279 (1964) ("It is elementary that the party seeking review has the duty to see that the appellate court is presented with a record which is sufficient to show the alleged errors and all matters necessary for consideration of the questions presented."). Furthermore, it does not appear that the alleged errors in the transcript affected the district court's decision.

**Affirmed.**