*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1785**

In the Matter of the Welfare of the Children of:
J. J. V. S. and A. M.,
Parents

and

In the Matter of the Welfare of the Children of:
J. J. V. S. and T. J.,
Parents.

**Filed March 28, 2016**
**Affirmed**
**Ross, Judge**

Faribault County District Court
File Nos. 22-JV-14-176;
22-JV-14-177

Ryan A. Gustafson, Christopher J. Ubben, Frundt & Johnson, Ltd., Blue Earth, Minnesota (for appellant J.J.V.S.)

Troy G. Timmerman, Faribault County Attorney, Graham Berg-Moberg, Assistant County Attorney, Blue Earth, Minnesota (for respondent Faribault and Martin County Human Services)

A.M., Waycross, Georgia (pro se respondent)

Joli Heinitz, Blue Earth, Minnesota (Guardian ad Litem for M.M. and T.S.)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Randall, Judge.[*]

## UNPUBLISHED OPINION

**ROSS**, Judge

Mother J.J.V.S. appeals from a district court order determining that her children need protection or services, arguing that the county did not present clear and convincing evidence that the children were exposed to dangerous criminal activity occurring in her home. The record informs us that clear and convincing evidence proves that methamphetamine dealing was occurring in the home and that mother, herself a methamphetamine user, was aware of it. We hold that the district court did not abuse its discretion by determining that the home environment has put the children in need of the county's protection or services, and we affirm.

## FACTS

Faribault County Human Services filed a petition in December 2014 alleging that J.J.V.S.'s children, ten-year-old T.S. (and presumably three-year-old M.M.), need protection or other services (a "CHIPS" petition) after the county learned that M.M. was present at home during a methamphetamine sale by J.J.V.S.'s romantic acquaintance, L.N. The CHIPS petition relies on two statutory grounds. The first is that the children lack necessary food, clothing, shelter, education, or other required care because J.J.V.S. is unable or unwilling to provide care under Minnesota Statutes section 260C.007,

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

subdivision 6(3) (2014). And the second is that the children's behavior, condition, or environment are injurious or dangerous under Minnesota Statutes section 260C.007, subdivision 6(9) (2014).

The district court conducted a bench trial on the petition in September 2015. Deputy Arnold Zuniga testified that he coordinated a controlled purchase of drugs in December 2014 at a southern Minnesota home. Deputy Zuniga and two assisting officers outfitted a confidential informant with video and audio recording and transmitting equipment. The informant entered J.J.V.S.'s home in the afternoon and purchased an eighth of an ounce of methamphetamine from L.N. Detective Debra Flatness testified that she assisted and could hear a child's voice during the transaction while she listened to the audio transmission. The court saw the recording and learned that police arrested J.J.V.S. and L.N.

A social worker testified that she met with J.J.V.S. after her arrest. She testified that J.J.V.S., L.N., and the children shared the home where the drug deal occurred. She opined that a child exposed to drug dealing at home would need protection or services arising from both the exposure to the drug dealing and to the drugs. The guardian ad litem also opined that this kind of criminal activity in the home can be dangerous, in part due to the nature of people generally associated with drug deals.

A former child-protection case manager testified that J.J.V.S., L.N., and M.M. could all be seen in the drug-transaction video. She opined that drug activity in the home is unsafe because of potential collateral circumstances, like shootings or other violent crime. The case manager also testified that J.J.V.S.'s urinalyses revealed methamphetamine three times, and the county's toxicology reports corroborated this testimony.

3

The district court found that clear and convincing evidence proved that a controlled drug deal for an eighth of an ounce of methamphetamine occurred in J.J.V.S.'s home with J.J.V.S. and M.M. present; that J.J.V.S. is familiar with the informant, who is herself a methamphetamine purchaser; that J.J.V.S. tested positive for methamphetamine multiple times in the months following the drug deal; and that J.J.V.S. falsely denied knowing that the drug deal was occurring.

The district court concluded that the children need protection or services based on their living in a dangerous or injurious environment under Minnesota Statutes section 260C.007, subdivision 6(9). The district court made no finding as to the other statutory ground in the CHIPS petition. J.J.V.S. appeals.

## D E C I S I O N

We afford the district court's CHIPS determination considerable deference. *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 733 (Minn. App. 2009). The decision must be supported by findings that are not clearly erroneous and rest on evidence that is clear and convincing. *Id*. Fact findings are clearly erroneous if our review of the record leaves us with a definite and firm conviction that they are mistaken. *In re Welfare of B.A.B.*, 572 N.W.2d 776, 778 (Minn. App. 1998). The district court's decision here clears that standard.

The district court may determine that a child needs protection or services if it concludes that the evidence supports one of the bases identified in Minnesota Statutes section 260C.007, subdivision 6 (2014). The district court determined that T.S. and M.M. need protection or services under subdivision 6(9), which defines a child as being in need of protection or services when the child's behavior, condition, or environment is injurious

4

or dangerous. "An injurious or dangerous environment may include, but is not limited to, the exposure of a child to criminal activity in the child's home." Minn. Stat. § 260C.007, subd. 6(9).

J.J.V.S. argues that the evidence does not establish that T.S. was exposed to criminal activity in the home because T.S. was not home during the methamphetamine deal. She similarly argues that although M.M. was at home, M.M. was in a different room when the drug deal occurred. J.J.V.S.'s argument rests on the mistaken assumption that "exposure" requires physical presence during a proven crime. The statute recognizes the danger of "criminal activity," and the kind of danger or harm that can arise from criminal activity exists before, during, and after the actual crime occurs. The district court heard testimony that suggested danger from the collateral consequences of the specific crime of drug dealing. And even without this testimony it is commonly known that myriad dangers accompany drug dealing, such as neglectful parenting, drug-related crimes, drug-induced aggression and violence, and inadvertent drug-consumption by children. The statute directed the district court to consider the dangers arising from "criminal activity," and it was not bound to restrict its consideration only to those circumstances when the children are present immediately at the time specific crimes occur. That J.J.V.S. is a methamphetamine user herself also corroborates the district court's recognition of the danger to the children arising from drug dealing in J.J.V.S.'s home.

J.J.V.S. reasonably argues that no real danger was shown because the county presented no evidence that criminal activity is a normal occurrence at the residence, that anyone associated with the house has a history of violent crime, or that violent crimes

actually occur in the area. But the statute does not dictate, and common sense does not require, that the district court must reserve protection only to those cases in which the criminal activity is more frequent.

**Affirmed.**